# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-IA-00952-SCT


*McKENZIE CHECK ADVANCE OF MISSISSIPPI, LLC*
*d/b/a NATIONAL CASH ADVANCE, CASH ADVANCE*
*CENTERS, INC., AND SHARON RUSSELL*


*v.*


*CENNIE M. HARDY, ANDREA JAMES, DOROTHY W.*
*HARKLESS, JOHN W. BUXTON, CINDERELLA*
*ROBINSON, TRACY ADAMS, RAYMOND E. NELSON,*
*STEPHEN MOORE, GRADIE COLLEY, TOMMEAKKA*
*COLLEY, ANTHONY O. DAVIS AND DEBRA A. DAVIS*

**CONSOLIDATED WITH**
**NO. 2002-IA-00953-SCT**


*ADVANCE AMERICA, CASH ADVANCE CENTERS*
*OF MISSISSIPPI, INC. AND JERALD PARRISH*
*v.*


*LILLIAN D. TURNER*


**CONSOLIDATED WITH**
**NO. 2002-IA-00954-SCT**


*ADVANCE AMERICA, CASH ADVANCE CENTERS*
*OF MISSISSIPPI, INC. AND JERALD PARRISH*
*v.*


*GEORGIA PIERCE, JEARLEAN WILSON AND*
*JANET EVANS*


**CONSOLIDATED WITH**
**NO. 2002-IA-00956-SCT**

*ADVANCE AMERICA, CASH ADVANCE CENTER OF MISSISSIPPI, INC. AND JERALD PARRISH*

*v.*

*ANDREA JAMES, JAMES E. DIXON, EDWARD DIXON, KOKEISHA D. JOHNSON, SHERRY ANN BOWIE, CENNIE M. HARDY, DARLEAN M. MILSAP AND SHEMEKA LOFTON*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/30/2002 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | JASPER COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | RICHARD O. BURSON |
| | RICHARD A. FOLLIS |
| | ROBERT M. BUELL |
| | CHARLES K. SEYFARTH |
| ATTORNEYS FOR APPELLEES: | EDDIE JACOB ABDEEN |
| | THOMAS LEWIS TULLOS |
| | JEANNENE T. PACIFIC |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 02/26/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE PITTMAN, C.J., WALLER, P.J., AND CARLSON, J.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     McKenzie Check Advance of Mississippi, LLC, d/b/a National Cash Advance ("NCA") and Advance America, Cash Advance Centers of Mississippi, LLC ("Advance America") were denied their motion to compel arbitration against current and former customers (hereinafter "Customer") . Pursuant to M.R.A.P. 5, we granted NCA and Advance America permission to seek interlocutory review in these four consolidated appeals of the rulings of the circuit court based on their assertions of abuse of discretion in the trial court's failure to apply the Federal Arbitration Act ("FAA") and refusal to enforce the arbitration agreements. Finding the trial court erred in denying the motions to compel arbitration, this Court reverses

2

the judgments entered by the Circuit Court of Jasper County and remands this case for further proceedings consistent with this opinion.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.     NCA and Advance America are licensed check cashers which engage in delayed deposit check cashing pursuant to the Mississippi Check Cashers Act, Miss. Code Ann. §§ 75-67-501 *et seq.* (Rev. 2000). NCA and Advance America accepted personal checks from their customers for amounts not greater than $400 plus a fee which may not exceed 18% of the face amount of the check. *See* Miss. Code Ann. § 75-67-519(2) & (4).  This fee charged by a licensed check casher for cashing a check is deemed by law to be a service fee rather than interest. *See id.* § 75-67-515(4). The following scenario is indicative of a typical transaction between NCA or Advance America and its customer. On the day the check is written, NCA or Advance America gives the customer cash equal to the face value of the check less the fee authorized by statute. NCA and Advance America then agree to delay deposit of the check until an agreed future date which is usually the customer's next payday. *See id.* § 75-67-519(1).  The customer then agrees to repurchase the check by paying the face amount of the check in cash on or before the deposit date; otherwise, NCA or Advance America will present the check for deposit to the customer's bank.

¶3.     Each of the Customers in this case contracted with either NCA or Advance America for delayed deposit check cashing services as described above. In conjunction with their transactions, each Customer also entered into an arbitration agreement with either NCA or Advance America. The arbitration agreement provided that all disputes between the Customer and NCA or Advance America would be resolved by binding arbitration under the Federal Arbitration Act, except those disputes that were within the jurisdiction of a small claims tribunal; however, both the Customer and NCA or Advance America were mutually

3

obligated to arbitrate all other disputes between them, and all parties waived their rights to trial by jury in any dispute. Regardless of which party demanded or initiated arbitration, NCA and Advance America agreed to advance the Customer's portion of the expenses associated with initiating arbitration, including the filing and hearing fees. The Customer also had the right to select the arbitrator, and the arbitration was required to be held in a venue which was convenient to the Customer.

¶4.     The arbitration agreement was conspicuously presented and was written in plain English. The rights that both parties agreed to waive by signing the arbitration agreement were printed in all capital letters and bold typeface to highlight them from the rest of the text. Both parties signed the Customer Agreement directly under a highlighted acknowledgment that drew attention to the fact that the Customer Agreement contained and included a "Waiver of Jury Trial and Arbitration Agreement."

¶5.     On February 19, 2002, a complaint was filed collectively by former and current customers of both NCA and Advance America alleging that each subsequent transaction with NCA and Advance America was a renewal or extension of the first transaction allowing NCA and Advance America to charge an additional fee.[1] In conjunction with these transactions, each Customer entered into an arbitration agreement

---

[1]The plaintiffs referred to the defendants' practices as "payday lending." In the plaintiffs' brief, we find the following allegations:

> The way that payday lending works is as follows: if a customer wants to borrow $100.00 they (sic) write a check for $118.00 to the payday lender who gives them (sic) $100.00 in cash. In 14 days the customer returns and pays the face amount of the check to the lender. The lender accepts the cash for the old loan, but immediately renews the first loan with new loan money. In essence what happens is if the customer can't afford to repay the entire amount they (sic) renew the loan for an additional 14 days, by paying another $18.00 fee to extend the loan.....Regardless of the fact that payday lenders characterize these subsequent transactions as new loans, the effect is still the same. The customer makes repeated payments of 18% interest every two weeks on these loans but never decreases the underlying principal. The end result is

with either NCA or Advance America. NCA and Advance America filed a motion to compel arbitration which was denied by the circuit court, finding that "(1) the FAA does not apply to the arbitration agreements, (2) the arbitration agreements lack mutuality of obligation, (3) the rationale of the concurring opinion of Justice Diaz in *Parkerson v. Smith*, 817 So. 2d 529 (Miss. 2002), is applicable to the arbitration agreements, and (4) Customers did not knowingly and voluntarily waive the constitutional right to a jury trial." The trial judge also denied NCA and Advance America's ore tenus motion to certify the matter for interlocutory appeal. NCA and Advance America timely petitioned this Court for permission to appeal from the circuit court's interlocutory order pursuant to M.R.A.P. 5, and this Court granted the petition. In this appeal, NCA and Advance America raise the following issue before this Court: Whether the circuit court erred in declining to apply the Federal Arbitration Act and in refusing to enforce the arbitration agreements between the Customers and National Cash Advance and Advance America.

## DISCUSSION

### A. Applicability of the Federal Arbitration Act

¶6. The grant or denial of a motion to compel arbitration is reviewed de novo. *East Ford, Inc. v. Taylor*, 826 So.2d 709, 713 (Miss. 2002) (citing *Webb v. Investacorp, Inc.*, 89 F.3d 252, 256 (5th Cir. 1996)). The Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, applies to all written agreements to arbitrate contained in any contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. Whenever a valid arbitration agreement exists between parties to an action, a court must "stay trial of the action until arbitration has been had in accordance with the terms of the parties' agreement." 9 U.S.C. § 3.

---

that by renewing the first loan for another two weeks the customer pays $36.00 instead of $18.00 for the same $100.00 they (sic) borrowed initially.

5

¶7.    Courts have long recognized the existence of "a liberal federal policy favoring arbitration agreements." *Perry v. Thomas*, 482 U.S. 483, 489, 107 S.Ct. 2520, 2525, 96 L.Ed.2d 426 (1987) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)). "In enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984). Unless the agreement to arbitrate is not part of a contract evidencing interstate commerce or is revocable "upon such grounds as exist at law or in equity for the revocation of any contract," arbitration is required. 9 U.S.C. § 2. At the same time, "arbitration is a matter of contract between the relevant parties; no party can be required to arbitrate absent an agreement to do so." *Rosenblum v. Travelbyus.com, Ltd.*, 299 F.3d 657, 662 (7th Cir. 2002) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)).

¶8.    The circuit court declined to apply the FAA to the arbitration agreements in this case because it found that the arbitration agreements were not contained in a written contract "evidencing a transaction involving commerce." NCA and Advance America contend the FAA applies to the arbitration agreement because their transactions involved interstate commerce as evidenced by the agreements which stated: "Our agreement to arbitrate is made pursuant to the FAA, because the transaction evidenced by this Agreement involves interstate commerce." The Customers argue NCA and Advance America failed to offer any evidence establishing the transactions involved interstate commerce. The Customers were residents of Mississippi and the offices in which the transactions took place were located in Mississippi. However, NCA and Advance America were both foreign corporations.

¶9.     In *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995), the Supreme Court held that Section 2 of the Federal Arbitration Act, which makes enforceable a written arbitration provision in "a contract evidencing a transaction involving commerce," 9 U.S.C. § 2, "should be read broadly to extend the Act's reach to the limits of Congress' Commerce Clause Power." *Allied-Bruce*, 513 U.S. at 265.

¶10.    The pertinent facts in *Allied-Bruce* follow: In 1987 Steven Gwin purchased a "Termite Protection Plan" from a local office of Allied-Bruce Terminix Companies which promised to protect his home against termites and provide treatment if necessary. *Id.* at 268. The Plan contained a clause which stated any claim shall be settled by arbitration.  In 1991 the Gwins sold their home and transferred the Termite Plan to the Dobsons.  The Dobsons soon found their new house infested with termites.  *Id.* After Allied-Bruce attempted to treat and repair the Dobsons' home, the Dobsons sued the Gwins and Allied-Bruce in an Alabama state court. *Id.* at 269. Pursuant to the arbitration clause and Section 2 of the FAA, Allied-Bruce filed a motion to stay to allow arbitration to proceed.  The trial court denied the stay, and Allied-Bruce appealed.

¶11.    The Supreme Court of Alabama upheld the denial of the stay finding a state statute made "written, predispute arbitration agreements invalid and 'unenforceable.'" *Id.* (citing *Allied-Bruce Terminix Cos. v. Dobson*, 628 So. 2d 354, 355 (Ala. 1993)). The Alabama Supreme Court held that the FAA did not apply because "the connection between the termite contract and interstate commerce was too slight." *Allied-Bruce*, 513 U.S. at 269. The Alabama Supreme Court also held that the parties must contemplate substantial interstate activity. *Id.*

7

¶12.    After examining Section 2 of the FAA, the United States Supreme Court reversed the Alabama Supreme Court finding that "the word 'involving' [as it pertains to interstate commerce] is broad and is indeed the functional equivalent of 'affecting.'" *Id.* at 273-74.

> [Section] 2 gives States a method for protecting consumers against unfair pressure to agree to a contract with an unwanted arbitration provision. States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause "upon such grounds as exist at law or in equity for the revocation of *any* contract." 9 U.S.C. § 2 (emphasis added). What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause. The Act makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal "footing," directly contrary to the Act's language and Congress' intent. See ***Volt Information Sciences, Inc. v. [Board of Trustees of Leland Stanford Junior University]***, 489 U.S. [468], 474, 109 S.Ct., [1248], 1253, [103 L.Ed.2d 488 (1989)].
> For these reasons, we accept the "commerce in fact" interpretation, reading the Act's language as insisting that the "transaction" in fact "involv [e]" interstate commerce, even if the parties did not contemplate an interstate commerce connection.

*Allied-Bruce*, 513 U.S. at 281. The Supreme Court remanded the case for further proceedings consistent with its opinion. *Id.*

¶13.    In ***First Family Financial Services, Inc. v. Fairley***, 173 F. Supp. 2d 565 (S.D. Miss. 2001), the district court applied the FAA and enforced an arbitration agreement between a foreign lender and a borrower, who was a citizen of Mississippi and had entered into a loan contract with the lender in Mississippi.

> The arbitration agreement signed by the parties is concomitant to the financing transaction entered into by First Family and the Defendant. . . . The financing transaction, itself, must comply with federal laws and regulations including the Truth-in-Lending Act (promulgated by Congress under its Commerce Clause powers). The Court therefore finds that a nexus exists between the arbitration agreement in this case and interstate commerce.

*Id.* at 573. Therefore, the district court granted the motion to compel arbitration. *Id.*

¶14.    In *Russell v. Performance Toyota, Inc.,* 826 So. 2d 719, 722 (Miss. 2002), this Court found that the FAA did apply to the arbitration agreement because "Performance Toyota is a Tennessee corporation with its principal place of business in Memphis, Tennessee, and Russell is an adult resident citizen of Lee County, Mississippi," and therefore, the "matter 'evidences a transaction in interstate commerce.'"

¶15.    Both the United States Supreme Court, other federal courts and this Court have recognized the strong federal policy favoring arbitration. In the case sub judice, the borrower and lender are citizens of different states. Even though it is not required that the parties to the transaction contemplate an interstate transaction, the Customers and NCA and Advance America expressly agreed that the FAA would apply to their transactions.

¶16.    Because the transactions did involve interstate commerce and because the parties agreed their arbitration agreement would be governed by the FAA,  we find that the circuit court erred by failing to apply the FAA to that arbitration agreement.

### B. Mutuality of Obligation

¶17.    The circuit court held that the arbitration agreements were unenforceable contracts under Mississippi law because they lacked mutuality of obligation. NCA and Advance America argue that although consideration is essential to the formation of a valid contract under Mississippi Law, mutuality of obligation is not. However, NCA and Advance America contend that the arbitration agreements in this case are supported by mutual promises which constitute consideration. The Customers argue the trial court properly found the arbitration provisions in the agreements were unenforceable due to a lack of mutuality of obligation. The Customers contend mutuality of obligation is a prerequisite to the formation of a valid bilateral contract under Mississippi law.

¶18.    Here, both parties promised to arbitrate all disputes between them that were not within the jurisdiction of a small claims tribunal. Both parties agreed to waive their right to a jury trial or to file suit in circuit court. Both parties had the option of litigating claims that were within the jurisdiction of the small claims tribunal. Neither NCA nor Advance America had any greater right or privilege to go to court or to pursue judicial remedies than did the Customers. The Customers enjoyed greater rights because they could demand that NCA or Advance America advance the costs of the arbitration for both parties. The Customers also had the right to select the arbitrator and control where the arbitration would be held.

¶19.    In *Prigden v. Green Tree Financial Servicing Corp.*, 88 F. Supp. 2d 655 (S.D. Miss. 2000), Stacey Prigden financed the purchase of a mobile home and her installment contract was later assigned to Green Tree. Prigden defaulted on her payments, and Green Tree began efforts to collect the money due. *Id.* at 656. Prigden filed suit against Green Tree alleging Green Tree had harassed and threatened her causing her embarrassment and humiliation. Green Tree moved to dismiss the suit and also to compel arbitration pursuant to the clause in the installment contract. *Id.*

¶20.    Pursuant to the arbitration agreement, the district court found:

> Green Tree, the "Assignee," reserved its right to seek judicial remedies on certain types of actions. At the same time, Green Tree preserved the right to compel arbitration as to *any other claim,* including any counterclaim that Plaintiff may assert in any judicial action instituted by Green Tree. Therefore, Green Tree generally had an option of whether to sue in court, especially with certain types of claims, or to submit a claim to arbitration. Plaintiff, meanwhile, is bound to arbitration on any claim she may bring on the contract. This is clearly one-sided.

*Id*. at 658. However, the district court further found that mutuality of obligation is not required under Mississippi law for a contract to be enforceable, as long as the underlying contract was supported by consideration. *Id.* at 659 (citing *Clinton Serv. Co. v. Thornton*, 233 Miss. 1, 100 So.2d 863, 866 (1958)). "Therefore, the arbitration clause is not unenforceable solely because it is one-sided." *Id.* In light

10

of the strong federal policy favoring arbitration, the district court held that the arbitration clause was not unconscionable. *Id.*

¶21.    In *First Family*, the district court found the defendant's argument regarding the illusory nature of the arbitration agreement without merit. 173 F. Supp. 2d at 572. The defendant argued that the arbitration agreement was one-sided and unsupported by consideration. *Id.* However, the district court, following the holding in *Prigden*, held that "'mutuality of obligation is not required for a contract to be enforceable,' and an 'arbitration clause is not unenforceable solely because it is one-sided.'" *Id.* (citing *Prigden*, 88 F. Supp. 2d 655, 659). The district court found that the arbitration agreement stated "In consideration of the mutual promises made in this agreement...." Therefore, the defendant was unable to establish the illusory nature of the agreement. *Id.* The district court granted the motion to compel arbitration.

¶22.    In *Murphy v. AmSouth Bank*, 269 F. Supp. 2d 749 (S.D. Miss. 2003), the district court again held:

> Regarding the mutuality issue, plaintiffs argue because the arbitration agreement mandates arbitration of any claim they might choose to assert, while reserving unto AmSouth the right to utilize the remedies of foreclosure, selfhelp repossession and replevin in a court, the agreement lacks mutuality of obligation and is for that reason unconscionable and unenforceable. This court has previously rejected this identical argument. *See First Family Financial Services, Inc. v. Fairley,* 173 F.Supp.2d 565, 572 (S.D.Miss. 2001) (holding that " 'mutuality of obligation is not required for a contract to be enforceable,' and an 'arbitration clause is not unenforceable solely because it is one-sided.' ") (quoting *Pridgen v. Green Tree Financial Servicing Corp.*, 88 F.Supp.2d 655, 659 (S.D.Miss. 2000)); *see also Raesly v. Grand Housing, Inc.*, 105 F.Supp.2d 562, 570 (S.D.Miss. 2000) (same).

*Murphy*, 269 F. Supp. 2d at 752.

¶23. Pursuant to Mississippi law, mutuality of obligation is not required for an arbitration agreement to be enforceable as long as there is consideration. Therefore, we find that the circuit court erred in finding that the arbitration agreements were unenforceable for lack of mutuality of obligation.

### C. Parkerson v. Smith

¶24. In denying the motion to compel arbitration, the trial court relied upon Justice Diaz's concurring opinion in *Parkerson v. Smith*, 817 So. 2d 529 (Miss. 2002). In *Parkerson*, this Court held that the Magnuson-Moss Warranty Act superceded the FAA and prohibited the enforcement of otherwise binding arbitration agreements contained in warranty contracts which were subject to the MMWA. However, the plurality opinion did not address the issues of whether the arbitration clause was unconscionable or whether the clause impermissibly waived Parkerson's right to a jury trial.

¶25. In a concurring opinion, Justice Diaz discussed why he believed the arbitration agreement was unconscionable. *Id.* at 535-37. The arbitration provision required Parkerson to pay the attorney's fees and costs if she lost in arbitration. *Id.* at 536. Here, there is no such stipulation found in the arbitration clause. NCA and Advance America agreed to advance the cost of arbitration to the Customers, but the Customers were not required to reimburse NCA or Advance America if they did not prevail.

¶26. Justice Diaz next cited a case dealing with an indemnity clause, not an arbitration clause, to find that "the defendants must show that 'the provision was reasonably related to the business risks of the parties.'" *Id.* (quoting *Entergy Miss. Inc. v. Burdette Gin Co.*, 726 So.2d 1202, 1207-08 (Miss. 1998)) (quoting *Bank of Indiana, Nat'l Ass'n v. Holyfield*, 476 F. Supp. 104, 109 (S.D. Miss. 1979)). In *East Ford, Inc. v. Taylor*, this Court held:

> While *Burdette* concluded that an indemnity clause within a contract of adhesion is presumptively unconscionable, the same is not true for arbitration clauses. *Burdette*

12

involved an agreement to indemnify, which essentially allows a party to contract away or escape liability. Arbitration agreements merely submit the question of liability to another forum--generally speaking, they do not waive liability. Furthermore, Congress has expressed no federal interest in enforcing indemnification agreements as it has in guaranteeing the enforcement of valid arbitration agreements. *See* Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. As noted, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," with any doubt concerning the scope of the agreement resolved in favor of arbitration. *Bank One, [N.A. v. Coates,* 125 F.Supp.2d 819,] 827 [(S.D.Miss. 2001)] (quoting **Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.**, 460 U.S. 1, 24-25, 103 S.Ct. 927).

*East Ford*, 826 So.2d at 716.

¶27.    Again, Justice Diaz's concurring opinion was not the holding of this Court.[2] Regardless, the facts of the case sub judice are clearly distinguishable from **Parkerson**. Therefore, this Court finds that the circuit court erred in relying on the concurring opinion in **Parkerson** when it denied NCA and Advance America's motion to compel arbitration.

### D. Knowing, Intelligent and Voluntary Waiver of Jury Trial

¶28.    The trial court, again following Justice Diaz's concurring opinion in **Parkerson**, found that the Customers did not knowingly, intelligently and voluntarily waive their constitutional rights to a jury trial.

¶29.    In **First Family**, the district court stated that Angela Fairley, the defendant, must prove procedural unconscionability by showing "a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms." 173 F. Supp. 2d at 570 (quoting **Nauru Phosphate Royalties, Inc. v. Drago Daic Interests Inc.**, 138 F.3d 160, 165 (5th

---

[2]In fact, the **Parkerson** opinion came from a heavily divided court. McRae, P.J., for the Court, Diaz, Easley and Graves, JJ., concurred. Carlson, J., concurred in result only. Diaz, J., concurred with separate written opinion joined by McRae, P.J., Easley and Graves, JJ. Cobb, J., dissented with separate written opinion. Pittman, C.J., concurred in part and dissented in part with separate written opinion joined by Waller, J. Cobb and Carlson, JJ., joined in part. Smith, P.J., did not participate.

Cir. 1998)). Fairley argued the arbitration agreement was procedurally unconscionable because she did not "voluntarily enter into it, did not have a chance to read it, was not given a chance to negotiate its terms, and because the agreement used complex legal terms that [she] could not understand." However, the district court, finding that the agreement was written in simple and plain English, held there was no procedural unconscionability in the arbitration agreement. ***Id.***

¶30.    "It is well settled under Mississippi law that a contracting party is under a legal obligation to read a contract before signing it." ***Id. See Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co.,*** 584 So.2d 1254, 1257 (Miss. 1991). *See also **Koenig v. Calcote***, 199 Miss. 435, 25 So.2d 763 (1946);***McCubbins v. Morgan***, 199 Miss. 153, 23 So.2d 926 (1945). In addressing the constitutional right to a jury trial, the court in ***Bank One, N.A. v. Coates***, 125 F. Supp. 2d 819, 834 (S.D. Miss. 2001), *aff'd mem.*, 34 Fed. Appx. 964 (5th Cir. 2002), stated that the Constitution does not "confer the right to a trial, but only the right to have a jury hear the case once it is determined that the litigation should proceed before a court. If the claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes."

¶31.    In the case sub judice, the Customers do not allege that they are illiterate that NCA or Advance America failed to give them an opportunity to read the arbitration agreement or prevented them from doing so in any way. Had they read the arbitration agreement, as the law presumes that they did, they would have easily understood the language of the agreement, and their attention would have been particularly drawn to the rights that they were agreeing to waive by signing the agreement, which were printed in larger capital letters and in bold typeface to highlight them from the rest of the text.

¶32. Therefore, the circuit court erred in finding the Customers did not knowingly, intelligently and voluntarily waive their constitutional right to a jury trial when they signed the arbitration agreement with NCA and Advance America.

## CONCLUSION

¶33. The circuit court erred in denying NCA and Advance America's motion to compel arbitration. Because the transaction involved interstate commerce and because both parties agreed the arbitration agreement would be governed by the FAA, the Federal Arbitration Act is applicable to the agreement between the parties. Pursuant to Mississippi law, mutuality of obligation is not required for an arbitration agreement to be enforceable as long as there is consideration. Also there was no evidence presented that the Customers did not knowingly, intelligently and voluntarily waive their constitutional right to a jury trial when they signed the arbitration agreement with NCA and Advance America. Therefore, the judgments of the Circuit Court of Jasper County are reversed, and these cases are remanded for the trial court to grant the motions to compel arbitration.

¶34. **REVERSED AND REMANDED.**

**PITTMAN, C.J., SMITH AND WALLER, P.JJ., COBB AND DICKINSON, JJ., CONCUR. EASLEY AND GRAVES, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING**.