# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-IA-00963-SCT

*NORWEST FINANCIAL MISSISSIPPI, INC., WELLS
FARGO FINANCIAL MISSISSIPPI, INC. AND
CENTURION LIFE INSURANCE COMPANY*

*v.*

*PAULA F. McDONALD, EULA LINDSEY, BARBARA
J. JONES, DARRYL MATTHEWS, AZALENE HARE
AND KEVIN JONES*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/03/2002 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | JASPER COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | FRED L. BANKS, JR. |
| | LUTHER T. MUNFORD |
| | REUBEN V. ANDERSON |
| | REBECCA L. HAWKINS |
| | JOE BASENBERG |
| | LOUIS CLIFTON NORVELL |
| ATTORNEYS FOR APPELLEES: | JOHN F. HAWKINS |
| | RANCE N. ULMER |
| | JAMES MICHAEL TERRELL |
| | ROBERT GORDON METHVIN, JR. |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 01/13/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE COBB, P.J., CARLSON AND DICKINSON, JJ.**

**COBB, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     This is an interlocutory appeal filed by Norwest Financial Mississippi, Inc., Wells Fargo

Financial Mississippi, Inc.[1] and Centurion Life Insurance Co. (lenders) from an order of the

Circuit Court of Jasper County, Mississippi, denying the lenders' motion to compel arbitration

in the lawsuit brought by Paula F. McDonald, Eula Lindsey, Barbara J. Jones, Darryl Matthews,

Azalene Hare and Kevin Jones (borrowers).   Loans ranging from $100 to $1,657 were made

by Norwest to the borrowers between 1995 and 1999.

## FACTS

¶2.     Each of the borrowers obtained consumer loans from the lenders.   According to the

borrowers, when potential borrowers approach these lenders for loans, it is because, in all

likelihood, they are unable for credit reasons to obtain financing from a bank or credit union

with lower risk underwriting guidelines.   Some of the borrowers lived in rural areas and had only

a high school education, although none claimed to be unable to read and write.   Five of the six

borrowers had signed arbitration agreements with the lenders.[2]   When the borrowers asked about

the papers they were signing, they claim that the lenders simply stated that borrowers were only

signing to get their money.   The borrowers claim that they were never told that they were giving

up their rights to a jury trial by signing the arbitration documents, although each borrower

signed a document that was the same or similar to the following:

---

[1] Lender Norwest Financial Mississippi, Inc. subsequently changed its name to Wells Fargo Financial Mississippi, Inc.  Centurion Life Insurance Co. provided credit insurance for the Norwest loans and is a Wells Fargo affiliate.

[2] One of the borrowers, Azalene Hare, did not sign an arbitration agreement and is not a party to this interlocutory appeal.

2

# ARBITRATION AGREEMENT

This Arbitration Agreement ("Agreement") is between NORWEST FINANCIAL MISSISSIPPI, INC. ("Us" or "We" or "Our"), including our assignees, agents, employees, officers, directors, shareholders, parent companies, subsidiaries, affiliates, predecessors and successors, and the Borrower ("You" or "Your").

The parties agree as follows:

**(1)** **RIGHT TO ELECT TO ARBITRATE:** Any party covered by this Agreement may elect to have any claim, dispute or controversy ("Claim") of any kind arising out of or relating to your Loan Agreement, or any prior or future dealings between us, resolved by binding arbitration. A Claim may include, but shall not be limited to, the issue of whether any particular claim must be submitted to arbitration, or the facts and circumstances involved with your signing of this Agreement, or your willingness to abide by the terms of this Agreement or the validity of this Agreement. Any such election may be made at any time. Both parties agree that neither party has to initiate an arbitration proceeding before exercising remedies of self-help repossession, non-judicial foreclosure, replevin or other similar remedies. The filing of a lawsuit or the pursuit of other self-help remedies does not mean that either party has waived the right to subsequently elect to submit a Claim to arbitration.

**(2)** **RULES:** If arbitration is elected, it will be conducted pursuant to the Commercial Arbitration Rules of the American Arbitration Association ("Rules"). If you have any questions concerning the American Arbitration Association, or if you wish to obtain a copy of their Rules and forms, you may call (800)778-7879. Any hearing will take place in the county of your residence. The arbitrator shall be neutral and either party may require that the arbitrator be a retired federal judge. The arbitrator shall apply all applicable law and shall provide a written decision that includes findings of fact and conclusion of law. Judgment upon the award issued by the arbitrator may be entered in any court having jurisdiction.

**(3)** **UNITED STATES ARBITRATION ACT:** The parties agree the Loan Agreement involves "commerce" as defined in the United States Arbitration Act ("USAA"), Title 9, United States Code, and this Agreement shall be governed by the provisions of the USAA.

**(4)** **FEES AND COSTS:** Any party who initiates the arbitration proceeding will be responsible for payment of the filing fee required under the Rules. The arbitrator will then determine and state in his written decision who must pay the remaining arbitration costs and/or how the costs will be shared. Each party shall be responsible for their own attorney, witness, and/or expert fees and costs unless the Loan Agreement provides otherwise.

**(5)** **LIMITATIONS OF RIGHTS: IF ARBITRATION IS ELECTED BY EITHER PARTY UNDER THIS AGREEMENT (A) YOU WILL NOT HAVE THE RIGHT TO GO TO COURT OR TO HAVE A JURY TRIAL; (B) YOU WILL NOT HAVE THE RIGHT TO ENGAGE IN PRE-ARBITRATION DISCOVERY EXCEPT AS PROVIDED IN THE RULES; (C) YOU WILL NOT HAVE THE RIGHT TO HAVE ANY CLAIM ARBITRATED AS A CLASS ACTION UNDER THE RULES OR UNDER ANY OTHER RULES OF CIVIL PROCEDURE; (D) THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING WITH LIMITED RIGHTS TO APPEAL; (E) THIS AGREEMENT SUPERSEDES ANY PRIOR ALTERNATIVE DISPUTE RESOLUTION AND/OR ARBITRATION AGREEMENT THAT MAY EXIST BETWEEN YOU AND US; (F) IF ANY PROVISION OF THIS AGREEMENT IS HELD TO BE INVALID, THE INVALID PROVISION SHALL NOT AFFECT THE ENFORCEMENT OF ANY OTHER PROVISION OF THIS AGREEMENT.**

**READ THIS ARBITRATION AGREEMENT CAREFULLY. IT LIMITS CERTAIN RIGHTS, INCLUDING YOUR RIGHT TO PURSUE A CLAIM IN COURT AND YOUR RIGHT TO HAVE A JURY TRIAL.**

[Signature lines]

¶3. The borrowers sued the lenders based on the lenders' sale of credit insurance, claiming among other things that the insurance was unnecessary, overpriced, and misrepresented. The lenders filed a motion to compel arbitration for the five borrowers who signed the arbitration agreements, and by order dated June 6, 2002, the circuit court denied their motion, finding the arbitration agreements unconscionable. The court also denied the lenders' Motion for

4

Interlocutory Appeal. Following the lenders' petition to this Court, we issued a stay of the circuit court proceedings and granted their petition for interlocutory appeal. See M.R.A.P. 5.

¶4. Centurion also filed suit in the federal district court of the Southern District of Mississippi and moved to compel arbitration of the claims against it.[3] On June 9, 2003, the federal district court, in accordance with an agreement between Centurion and the borrowers, ordered the borrowers to submit their claims against Centurion to arbitration pursuant to the terms of the agreement.[4] The order also stayed the Jasper County circuit court proceedings against Centurion until completion of the arbitration proceedings.

¶5. In July, 2004 this Court granted a Motion to Take Judicial Notice filed by Norwest/Wells Fargo which showed that the five borrowers defending this appeal each had filed arbitration claims against the lenders in March, 2004, with the American Arbitration Association (AAA).[5] These arbitration claims were filed subsequent to the order of the federal district court, but the arbitration claims were filed not only against Centurion, but also against Norwest and Wells Fargo.[6]

---

[3] It is not clear from the record when this suit was filed.

[4] One of the terms of the agreement was the requirement that Centurion pay all arbitration fees.

[5] Borrower Matthews subsequently dismissed Norwest/Wells Fargo from the arbitration proceeding, saying the arbitration claims against them were made by mistake (this motion was opposed by the lenders).

[6] Information regarding the arbitration was presented to this Court in their Motion to Take Judicial Notice filed by the lenders on May 17, 2004. This motion contained as attachments: 1) Darryl Matthews's Demand and Statement of Claims to the American Arbitration Association (AAA) dated 3/9/04 against Norwest, Wells Fargo and Centurion; 2) letter from AAA dated 3/15/04 requesting parties to clarify the nature of their claims so that fees may be determined; 3) Notice of Partial Dismissal filed 3/16/04, whereby

¶6.     We now hold that the trial court erred in denying the motion to compel arbitration, and we reverse and remand this case for further proceedings consistent with this opinion.

## ANALYSIS

¶7.     On appeal from a decision refusing to compel arbitration, the appellate court reviews the matter of unconscionability de novo because it presents questions of law. *Parkerson v. Smith*, 817 So.2d 529, 532 (Miss. 2002) (plurality opinion).  The Federal Arbitration Act provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Thus, whether an agreement to arbitrate may be held unenforceable because it is unconscionable is determined in reference to state law contract principles.  *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686-87, 116 S.Ct. 1652, 1656, 134 L.Ed.2d 902 (1996).  "The usual defenses to a contract such as fraud, unconscionability, duress, and lack of consideration may be applied to invalidate an arbitration agreement, so long as the law under which the provision is invalidated is not applicable only to arbitration provisions."  *East Ford, Inc. v. Taylor*, 826 So.2d 709, 714 (Miss. 2002).

---

Matthews dismissed Norwest and Wells Fargo, 4) and letter from AAA dated 5/12/04 to parties stating that the fee for Matthews would be $150.00 and the fee for the lenders would be a minimum of $625 (fee was based on "actual damages" being less than $10,000, but not affecting parties' ability to file for compensatory and/or punitive damages). Appellees objected to this motion solely because documentation was submitted for only one of the borrowers.  In response to the borrowers' objection, the lenders submitted documents for the other four borrowers which were the same except that only Matthews dismissed Norwest and Wells Fargo from the arbitration proceedings.  No other objections were raised.

6

¶8. The circuit court based its decision to deny the motion to compel arbitration on its finding that the arbitration agreements were unconscionable. The circuit court order read, in pertinent part:

> The Court finds that the Plaintiff's arguments regarding unconscionability are well taken. The Court reaches the conclusion as to unconscionability based on the concurring opinion in *Parkerson v. Smith*, 2002 WL 358678 (Miss. 2002), such concurring opinion being written by Justice Diaz and joined in by Justice McRae, Justice Easley, and Justice Graves. The Court further finds persuasive Plaintiffs' unconscionability argument regarding lack of meaningful choice as set out in *American General v. Branch*, 793 So.2d 738 (Ala. 2000). For these reasons, as well as others set out by Plaintiffs in their written submissions and in open Court, Defendants' Motion to Compel Arbitration is denied.

¶9. Two Mississippi federal district court cases which have upheld the use of the lenders' arbitration clause are: *Wells Fargo Financial Acceptance v. Jackson*, No. 4:01-CV-260MA (N.D. Miss. 2002) (Mills, J.) and *Slade v. Wells Fargo Financial Acceptance*, No. 3:01-CV-216WS (S.D. Miss. 2002) (Wingate, J.).

¶10. In *Jackson*, the plaintiffs claimed that the arbitration agreement was procedurally unconscionable because they were unaware of the full meaning of the agreement, no one tried to explain the meaning of arbitration, and the contract was presented on a "take it or leave it" basis. The court held that the plaintiffs offered no evidence of difficulty reading the arbitration agreement, nor was there other evidence of a disparity in sophistication, nor were the plaintiffs prevented from reading the agreement or rushed through it. The court then quoted the same language from the arbitration agreement as quoted in the present opinion, supra, stating that there was lack of evidence as to unconscionability. In *Slade*, the district court determined that

7

the motion to compel arbitration should be granted by conducting a two-step inquiry: (1) whether the parties agreed to arbitrate the dispute in question and (2) whether the dispute in question falls within the scope of the arbitration agreement. There was no discussion of unconscionability of the agreement in this opinion, as the order mainly discussed whether the claim fell within the scope of the arbitration clause. The court cited *Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000), in holding that doubts concerning the scope of arbitrable issues are resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or some other defense to arbitrability. We agree with the courts that the Norwest arbitration agreement is not unconscionable.

¶11. We addressed the inapplicability of Justice Diaz's *Parkerson* concurring opinion in *McKenzie Check Advance of Mississippi, LLC v. Hardy*, 866 So.2d 446, 454 (Miss. 2004). As in *Hardy*, not only are the borrowers in the case sub judice not required to pay the lenders' attorney's fees if they lose, the cost of initiating arbitration is much less than the minimum of $500 as found in *Parkerson,* as will be discussed below. Additionally, the lenders do not have the burden to prove lack of unconscionability, as argued in the *Parkerson* concurring opinion. The party resisting arbitration must shoulder the burden of proving a defense to arbitration. *Green Tree Financial Corp. - Alabama v. Randolph*, 531 U.S. 79, 92, 121 S.Ct. 513, 522, 148 L.Ed.2d 373 (2000).

¶12. The borrowers argue that the arbitration agreements are procedurally and substantively unconscionable and unenforceable for the following reasons: they are adhesion contracts; the

borrowers lacked a meaningful choice because they could not obtain another consumer loan without executing an arbitration agreement; and that the fees contained in the arbitration provisions are unreasonable and speculative. The lenders claim that the borrowers have not met their burden to show that the arbitration agreements are unconscionable.

¶13. This Court has explained the doctrine of unconscionability as follows:

> Unconscionability has been defined as an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party. . . .
> In *Terre Haute Cooperage v. Branscome*, 203 Miss. 493, 35 So.2d 537 (1948), this Court defined an unconscionable contract as '... one such as no man in his senses and not under a delusion would make on the one hand, and as no honest and fair man would accept on the other....' "
> The indicators of procedural unconscionability generally fall into two areas: (1) lack of knowledge, and (2) lack of voluntariness. A lack of knowledge is demonstrated by a lack of understanding of the contract terms arising from inconspicuous print or the use of complex, legalistic language, disparity in sophistication of parties, and lack of opportunity to study the contract and inquire about contract terms. A lack of voluntariness is demonstrated in contracts of adhesion when there is a great imbalance in the parties' relative bargaining power, the stronger party's terms are unnegotiable, and the weaker party is prevented by market factors, timing or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all.

*Entergy Miss., Inc. v. Burdette Gin Co.,* 726 So.2d 1202, 1207 (Miss. 1998)(internal citations omitted).

### A.    Adhesion contract

¶14. The borrowers argue that they are unsophisticated consumers with limited means and limited education. They claim that the use of complex, legal terms in the subject arbitration agreements presented on a "take it or leave it" basis, combined with the borrowers' lack of ability to understand such terms, proved a lack of knowledge, a lack of voluntariness, a lack of

meaningful choice and a significant disparity in bargaining power of the two parties. Additionally, they claim that because the arbitration agreement was a contract of adhesion, it is unconscionable and unenforceable.

¶15.   An arbitration agreement may not be labeled unconscionable simply because it carries with it aspects of adhesion. *East Ford, Inc. v. Taylor*, 826 So.2d at 716.   Additionally, courts have the ability to restrict enforcement of specific terms of a contract that are viewed as unconscionable.   Courts will generally enforce an arbitration agreement in a contract of adhesion unless the agreement is 1) not within the objectively reasonable expectations of the parties, or 2) unconscionably unfair. *Russell v. Performance Toyota, Inc.*, 826 So.2d 719, 726 (Miss. 2002).   However, consumers who sign contracts are charged with knowledge of the documents they execute. *Id.* at 726.

¶16.   As lenders point out, none of the borrowers cite either a lack of a basic education or inability to read, none of the borrowers are unemployed, and each borrower received and signed multiple notices that all disputes would be subject to arbitration.   In addition to arbitration notices in their finance contracts, each borrower signed a stand-alone, one-page arbitration agreement printed in 12 point typeface.   Four such one-page signed arbitration agreements are included in the record.   The fifth borrower does not dispute that he signed the arbitration clause, but it is not included in the record.

¶17.   The borrowers claim that the lenders did not explain what arbitration was and did not tell the borrowers that they were giving up their rights to a jury trial. In *Washington Mutual Fin.*

10

*Group, LLC v. Bailey*, 364 F.3d 260 (5th Cir. 2004), the court ruled that under Mississippi law, the inability of borrowers to read did not render them incapable of possessing adequate knowledge of the arbitration agreement they signed. *Id.* at 264-65. The court also concluded that the trial court erred by finding the agreement unconscionable under Mississippi law because the lenders failed to specifically inform the plaintiffs that they were signing an arbitration agreement. In the present case, each borrower signed a single-page arbitration agreement, written in plain language. None of the borrowers claimed to be unable to read. There is no claim that the borrowers asked anyone to explain the process of arbitration or to explain what arbitration meant; the borrowers simply state that no one informed them that they were signing an arbitration agreement, or told them what an arbitration agreement was. Any reasonable person reading this document prior to signing it would expect to be subject to arbitration and would know that they were waiving their right to a jury trial. There is also no evidence that a reasonable person would not sign this document in return for a desired loan.

### B. The borrowers' lack of meaningful choice

¶18. Each borrower produced an affidavit stating that a search of the yellow pages in his or her area convinced them that they could not get a loan without signing an arbitration clause. One of the borrowers stated that he had been turned down "in the past" by a bank and assumed he could not get a bank loan. There was no mention of any steps besides these that borrowers undertook in an effort to get a loan without signing an arbitration agreement. There is no evidence that any borrower even balked at the idea of signing the arbitration agreement. There was no evidence submitted that the borrowers could not get a competitive loan from another

11

company or even that they could not do without the loan. The borrowers have not met their burden of showing that the arbitration clause was unconscionable in this regard.

### C. Unreasonable and speculative fees

¶19. Because this question is arbitration-specific, it must be decided as a matter of federal law. *Russell v. Performance Toyota, Inc.*, 826 So.2d at 722. The U.S. Supreme Court has held that arbitration costs might be so high as to preclude a litigant from seeking a remedy. *Green Tree*, 531 U.S. at 79, 121 S.Ct. at 522. The lenders' argument that because they have initiated the arbitration the borrowers will not have to pay a fee, rings hollow. There is no evidence that the lenders would have initiated this arbitration claim had the borrowers not first filed a suit in circuit court. Had the borrowers taken their claims to the AAA rather than circuit court, the borrowers would have been responsible for the arbitration fees according to the arbitration agreements. Requiring borrowers to first file state court actions in order to have arbitration fees paid by lenders thwarts the concept of lowering overall litigation costs that arbitration is meant to foster.

¶20. The borrowers cite the *Parkerson* concurring opinion for the proposition that this Court may invalidate an arbitration provision that requires plaintiffs to pay excessive arbitration fees. 817 So.2d at 535-37 (Diaz, J., concurring). In *Parkerson*, Justice Diaz's concurring opinion stated that the contract was unconscionable because Parkerson could not afford to pay the high costs of starting arbitration, which was a minimum filing fee of $500 per Rule 51 of the Commercial Rules of the AAA.

¶21.    In the present case, the five borrowers are each suing for $1,000,000 in compensatory and $5,000,000 in punitive damages.    The borrowers argue that the AAA's Commercial Arbitration Rules provide for a filing fee of $13,000 and a case service fee of $3,000 for all claims over $10,000,000.    However, in letters sent by AAA to each borrower,[7] the fee for arbitration was quoted to be only $125 for the borrower and $625 for the lender,[8] based on an "actual damage" amount of less than $10,000.    The AAA letter to the borrowers provided the following explanation for the lower fees:

> The AAA applies the *Supplementary Procedures for Consumer-Related Disputes* to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. . . .
>
> Pursuant to section C-8 of the Consumer Rules, **the AAA assesses a filing fee based on the actual damages portion of the claim.  We do not consider monetary amounts for punitive, exemplary or compensatory claims when making this determination, and as a guideline we use the monetary amount of the contract or transaction to set an upper limit on the claim amount for administrative fee purposes only.**
>
> **This is an administrative determination and does not impose any limits on what a party may claim in the arbitration.  Its sole purpose is to determine an appropriate administrative fee for the size and complexity of the dispute so that arbitration remains an affordable dispute resolution option, regardless of which party is responsible for paying these costs.**

---

[7] Copies of these letters were presented to this Court by the lenders in their Motion to Take Judicial Notice and in the lenders' reply to the borrowers' response in opposition to this motion.  The borrowers do not dispute that the $125 fee quoted by AAA is correct.

[8] The letter contained a caveat that the fee is subject to change if the claim amount changes or additional information is received regarding the nature of the claims. The amount quoted was based on a letter from Matthews's attorney stating that the compensatory claim amount was $1,100,000.

13

(emphasis added).

¶22.    A maximum $125 fee should not prevent anyone from pursuing a remedy via arbitration. Additionally, the totality of evidence presented on the issue of the borrowers not being able to pay the costs of arbitration is an affidavit from each of the borrowers stating the amount of money they earned per month and a statement that they could not afford arbitration fees. We conclude that the borrowers have not met the burden of showing that their arbitration fees are unconscionable.

**CONCLUSION**

¶23.    The trial court erred in denying the motion to compel arbitration. All but one of the borrowers have commenced arbitration proceedings against all lenders and do not dispute the maximum fees to be paid by the borrowers as being $125. This fee does not prohibit the borrowers from seeking a remedy through arbitration. Additionally, the borrowers have not met the burden of proving either procedural or substantive unconscionability in their contracts with the lenders. We therefore reverse the trial court's order denying the motion to compel arbitration, and we remand this case to the circuit court with directions that it order that claims brought in connection with the borrowers' contracts with the lenders must be submitted to arbitration according to the contracts.

¶24.    **REVERSED AND REMANDED.**

**SMITH, C.J., WALLER, P.J., CARLSON AND DICKINSON, JJ., CONCUR. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, EASLEY AND RANDOLPH, JJ., NOT PARTICIPATING.**

14