# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00154-COA

**McINTOSH TRANSPORT, LLC**                                              **APPELLANT**

**v.**

**LOVE'S TRAVEL STOPS & COUNTRY**                                        **APPELLEES**
**STORES, INC. AND EMPIRE TRUCK SALES,**
**LLC**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/23/2020 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS JR. |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES BRANDON JUSTICE |
| ATTORNEYS FOR APPELLEES: | SHEA STEWART SCOTT |
| | MICHAEL JEFFREY WOLF |
| | JULIA BRYANT JIMENEZ |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED, RENDERED, AND REMANDED - 05/10/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WILSON, P.J., WESTBROOKS AND LAWRENCE, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.     Following an incident in which a truck owned by McIntosh Transport, LLC (McIntosh) was damaged by an employee of Love's Travel Stops and Country Stores, Inc. (Love's), the truck was taken to Empire Truck Sales, LLC (Empire) for repair. Issues arose surrounding the repair and payment for same, and McIntosh filed an action against Love's and Empire including claims for bailment, negligence, gross negligence, res ipsa loquitur, and breach of contract. Empire and Love's filed motions to compel arbitration. The Lowndes County Circuit Court granted the motions. McIntosh appeals. Upon review, we

reverse the decision of the circuit court and render a decision in favor of McIntosh regarding the motion to compel arbitration. We hereby remand the case to the circuit court for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2.     At the time of the events giving rise to this action, McIntosh was a transport trucking company.[1] On May 22, 2019, an employee of McIntosh was delivering freight in a 2014 Cascadia 125 Freightliner truck. During the delivery, the driver stopped at Love's for routine servicing of the truck. A Love's employee accidentally primed the vehicle's fuel system with diesel exhaust fluid (DEF), rendering the truck unusable. A Love's employee called McIntosh and informed Jessica McIntosh (part-owner and secretary for the company) of the problem and told her that Love's would have the truck towed to Empire for repair. McIntosh alleged that Love's agreed to pay for the truck to be towed, the repairs, and a rental truck for McIntosh to use while repairs were underway.

¶3.     On June 20, 2019, Love's informed Jessica McIntosh that the truck was ready to be picked up. She sent her nineteen-year-old son, Tamarcus Hardy, and a driver to Empire to retrieve the truck. Before he was allowed to leave Empire with the truck, Hardy was required to sign an invoice and a service worksheet. Both documents included an arbitration provision as part of the "Terms and Conditions of Sale."

¶4.     The same day Hardy picked up the truck from Empire, the check engine light came

---

[1] McIntosh has since ceased operation.

on. McIntosh alerted Love's to the problem. Love's informed McIntosh that the truck could be returned to Empire and if the second repair stemmed from the first repair then Love's would cover the cost. McIntosh took the truck to Clarke Power Services (Clarke) despite the fact that Love's told McIntosh that if it opted to take the truck to a repair shop other than Empire, Love's would not cover the towing and repair costs. Ultimately, Clarke determined that the second repair was necessitated by DEF remaining in the truck's fuel system. Issues arose regarding Love's alleged failure to pay for the repairs and related expenses.

¶5.     McIntosh sued Love's and Empire for bailment, negligence, gross negligence, res ipsa loquitur, and breach of contract.[2] Empire and Love's filed motions to compel arbitration or transfer the case to the Rankin County Circuit Court. In response, McIntosh argued that the only contract with Love's was the oral contract that arose when Love's offered to pay for repairs to McIntosh's truck. McIntosh also argued that there was no valid contract between it and Empire and that the arbitration provision was unconscionable. McIntosh based its arguments, in part, on the fact that Hardy was a nineteen-year-old minor when he retrieved the truck and signed the documents currently at issue, thus rendering the contract (and the included arbitration provision) invalid and unenforceable.

¶6.     A hearing was held on Empire's motion, which was joined by Love's. Hardy testified that he was nineteen years old when he signed his grandfather's name (Terry McIntosh) to

---

[2] The breach-of-contract claim does not stem from the contract at issue here. Instead, McIntosh alleges breach of an oral contract between it and Love's.

3

the documents containing the arbitration agreement.[3] These facts are not disputed by Empire or Love's. Whether Hardy was given the opportunity to review the documents prior to signing is disputed. An employee of Empire stated that Hardy was given a copy of the invoice. Hardy said that he was not given copies of any of the documents he signed. The circuit court granted the motion to compel arbitration, but did not set forth findings of fact or conclusions of law. McIntosh appeals arguing that there is no valid contract and that the arbitration agreement is unconscionable.

**STANDARD OF REVIEW**

¶7.    "The grant or denial of a motion to compel arbitration is reviewed de novo." *Rogers-Dabbs Chevrolet-Hummer Inc. v. Blakeney*, 950 So. 2d 170, 173 (¶11) (Miss. 2007) (quoting *East Ford Inc. v. Taylor*, 826 So. 2d 709, 713 (¶9) (Miss. 2002)). Where factual findings exist, they are reviewed for abuse of discretion. *Virgil v. Sw. Miss. Elec. Power Ass'n*, 296 So. 3d 53, 59 (¶11) (Miss. 2020). The burden of proving a defense to arbitration is placed on the party resisting arbitration. *Id.* at (¶12) (citing *Norwest Fin. Miss. Inc. v. McDonald*, 905 So. 2d 1187, 1193 (¶11) (Miss. 2005)).

**DISCUSSION**

I.    **The Contract**

---

[3] The briefing submitted by McIntosh states that Empire told Hardy to sign the company owner's name to the documents. In contrast, upon questioning at the hearing on the motion to compel arbitration, Hardy said "I felt like him being the owner of the company, I was supposed to sign his name."

4

¶8. McIntosh sets forth multiple reasons that, if legally and factually sound, would invalidate the contract signed by Hardy when he retrieved the truck from Empire. Specifically, McIntosh asserts that the contract is not binding because there was no mutual assent or consideration, and Hardy was not old enough to sign the contract under Mississippi law. The circuit court did not provide detailed findings of fact and conclusions of law, so we do not know what weight (if any) was given to these arguments at the trial court level. But as this Court recently recognized in *JP&G LLC v. Voss*, 331 So. 3d 569, 575 (¶7) (Miss. Ct. App. 2021), "it [is] beyond the circuit court's authority to determine whether the Agreement in its entirety was a valid contract, and it [is] improper to use such determination as a basis for denying [or granting] the existence of an agreement to arbitrate." As held by the United States Supreme Court and quoted with approval by this Court,

> attacks on the validity of the contract, as distinct from attacks on the validity of the arbitration clause itself, are to be resolved "by the arbitrator in the first instance, not by a federal or state court." For these purposes, an "arbitration provision is severable from the remainder of the contract," and its validity is subject to initial court determination; but the validity of the remainder of the contract (if the arbitration provision is valid) is for the arbitrator to decide.

*Id.* (quoting *Nitro-Lift Techs. L.L.C. v. Howard*, 568 U.S. 17, 20-21 (2012)).

¶9. Based on the foregoing, the parties' dispute regarding the validity of the contract is not properly before us. Accordingly, our review of the issues on appeal is limited to the validity of the arbitration agreement.

## II. The Arbitration Agreement

¶10. "Courts have long recognized the existence of a liberal . . . policy favoring arbitration

5

agreements." *McKenzie Check Advance of Miss. LLC v. Hardy*, 866 So. 2d 446, 450 (¶7) (Miss. 2004) (internal quotation marks omitted). In determining the appropriateness of arbitration, we must apply a two-step analysis and consider (1) whether the parties agreed to arbitrate the dispute and (2) whether external legal constraints bar arbitration of the dispute. *East Ford*, 826 So. 2d at 713 (¶¶9-10). "[A]ll doubts concerning the scope of arbitrable issues, the construction of the contract language, and asserted defenses to arbitration must be resolved in favor of arbitration." *MS Credit Ctr., Inc. v. Horton*, 926 So. 2d 167, 175 (¶21) (Miss. 2006).

*Step One: Whether the parties agreed to arbitrate.*

¶11. McIntosh maintains that the arbitration agreement is unenforceable because it is unconscionable, but there are other issues that must be decided before we turn to McIntosh's contract defenses. First, we must determine whether the parties agreed to submit their dispute to arbitration. We arrive at the answer to this question by focusing on two factors: (1) whether a valid arbitration agreement exists and (2) "whether the parties' dispute is within the scope of the arbitration agreement." *East Ford*, 826 So. 2d at 713 (¶9). In this instance, it is the validity of the arbitration agreement that is at issue rather than its scope.

¶12. "In applying traditional state-contract-law principles to make a determination on the question of arbitrability, the court presumes that parties intended courts to decide issues of substantive arbitrability, unless the parties clearly and unmistakably provide otherwise." *Nethery v. CapitalSouth Partners Fund II L.P.*, 257 So. 3d 270, 274 (¶19) (Miss. 2018)

6

(internal quotation marks omitted). "The terms of the arbitration provision must be honored in a dispute over arbitrability. Therefore, arbitration of the issue of arbitrability is the mandatory result if those are the terms to which the parties have validly agreed." *Greater Canton Ford Mercury Inc. v. Ables*, 948 So. 2d 417, 422 (¶13) (Miss. 2007); *see also Bank of Holly Springs v. Puryear ex rel. Est. of Brown*, 309 So. 3d 598, 603 (¶15) (Miss. Ct. App. 2020) ("The parties' agreement to arbitrate issues of arbitrability . . . is controlling.").

¶13. The portion of the arbitration agreement that is relevant to this part of our analysis is set forth below:

> a. CLAIMS AND DISPUTES COVERED. Except for those claims described below under the heading MATTERS NOT COVERED BY ARBITRATION, Empire and Customer agree that either party may elect to resolve by BINDING ARBITRATION all claims and disputes between us (Covered Claims). This includes, but is not limited to: all claims and disputes arising out of, in connection with, or relating to Customer's business relationship with Empire; any and all invoices, transactions, solicitations, all documents, promotions, or advertising; any actions or omissions relating to this or any other matter between Empire and Customer; *whether any such claim must be arbitrated; the validity and enforceability of this Arbitration Agreement and this agreement . . . .*
>
> . . . .
>
> d. ARBITRATION AND FORUM RULES. The arbitration will be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA") . . . .

(Emphasis added) (internal quotation marks omitted).

¶14. The Commercial Arbitration Rules as promulgated by the AAA and incorporated in the arbitration agreement state that "[t]he arbitrator shall have the power to rule on his or her

7

own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Am. Arbitration Assoc. Commercial Arbitration Rules and Mediation Procedures, R-7(a).

¶15. The arbitration agreement clearly and unmistakably specifies that the arbitrability of claims is to be decided by an arbitrator. But as stated in *Ables*, "arbitration of the issue of arbitrability is the mandatory result if those are the terms to which the parties have ***validly agreed***." *Ables*, 948 So. 2d at 422 (¶13) (emphasis added). As discussed in greater detail in the following section, based on Hardy's age we do not find that a valid agreement existed, thus the issue of arbitrability need not be sent to an arbitrator for determination.

*Step Two: Whether external legal constraints bar arbitration.*

¶16. "[T]he existence of legal constraints external to the parties' agreement[] [can foreclose] arbitration of the claim[] even if the claim was found to be within the arbitration provision in question . . . ." *Id.* at 423 (¶18). McIntosh argues that the arbitration agreement contained in the contract is unconscionable, thus rendering it invalid and unenforceable. Indeed, "contract defenses[] such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements. . . ." *Puryear*, 309 So. 3d at 604 (¶19) (quoting *Doctor's Assocs. Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). However, we do not find that resolution of this issue hinges on McIntosh's unconscionability claim.

¶17. Hardy was nineteen years old when he signed his grandfather's name to the documents that contain the arbitration agreement. Terry McIntosh testified that he owned the company

8

and his daughter, Jessica, was the secretary. Jessica testified that the truck was owned by the company and Jessica's testimony indicated that Hardy was not a McIntosh employee when he went to retrieve the truck. In any event, the only authority Hardy possessed was the actual authority to pick up McIntosh's truck from Empire. We see no action on the part of the principal (in this case McIntosh) for Hardy to do anything other than that. "In order to recover under a theory of apparent authority, the claimant must put forth 'sufficient evidence' of '(1) acts or conduct of the principal indicating the agent's authority, (2) reasonable reliance upon those acts by a third person, and (3) a detrimental change in position by the third person as a result of that reliance.'" *Adams Cmty. Care Ctr. LLC v. Reed*, 37 So. 3d 1155, 1160 (¶14) (Miss. 2010) (quoting *Eaton v. Porter*, 645 So. 2d 1323, 1325 (Miss. 1994)). Based on the facts before us, Hardy had no authority to enter into the contract.

## CONCLUSION

¶18. The arguments raised here—the validity of the contract and the validity of the arbitration provision contained therein—are intertwined because they hinge on Hardy's ability to bind McIntosh to a contract. As discussed above, for the foregoing reasons, the circuit court's order upholding the arbitration provision is reversed and rendered in favor of McIntosh. We also remand the case to the circuit court so that McIntosh can proceed with the claims in its complaint.

¶19. **REVERSED, RENDERED, AND REMANDED.**

**WILSON, P.J., GREENLEE, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. BARNES, C.J., CONCURS IN PART AND IN THE**

9

**RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**