# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CA-01316-SCT

*GREATER CANTON FORD MERCURY, INC.,*
*KEITH CLARK, FORD MOTOR COMPANY, RAY*
*L. FAYNE AND KATRINA FAYNE*

*v.*

*WALLACE ABLES, MARY BENNETT AND JOHN*
*WILLIAMS*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/18/2005 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| COURT FROM WHICH APPEALED: | HOLMES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | MICHAEL DAVID TAPSCOTT |
| | THOMAS WICKER |
| | DARA STEELE-BELKIN |
| | JOHN H.  FLEMING |
| | DANIEL H. SCHLUETER |
| | PHIL B. ABERNETHY |
| | ARNOLD DATRON LEE |
| | GARY E. FRIEDMAN |
| | LATOYA CHEREE MERRITT |
| ATTORNEY FOR APPELLEES: | J. DOUGLAS MINOR, JR. |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | VACATED IN PART AND REVERSED AND REMANDED IN PART - 02/01/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

## FACTS AND PROCEEDINGS BELOW

¶1.     Plaintiffs Wallace Ables, Mary Bennett and John H. Williams (Plaintiffs) purchased

pre-owned vehicles from Greater Canton Ford Mercury, Inc. (GCFM).  Plaintiffs allege that

Defendants, GCFM and its employees, Keith Clark, Ray L. Fayne, and Katrina Fayne, along with Ford Motor Company (Ford), committed fraud by selling them "certified, pre-owned vehicles" when, in fact, the vehicles were either not eligible for this program or had not undergone an inspection and maintenance program required of "certified, pre-owned vehicles." Defendants filed a Motion to Stay Litigation and Compel Arbitration. The circuit court denied the motion, and consequently, Defendants appeal. Separately, Ford appeals the applicability of the circuit court judgment to it, particularly, whether as a non-signatory it may compel arbitration.

¶2. In 2002, the three plaintiffs[1] each purchased a vehicle from GCFM, a Ford dealership located in Canton, Mississippi. In August 2003, the plaintiffs filed suit against GCFM, three of its employees, and Ford in the Holmes County Circuit Court alleging that due to Defendants' misrepresentations, they purchased vehicles under the belief that the vehicles were certified pre-owned when the vehicles had, in fact, not undergone the certification process required by Ford in order to qualify as "certified pre-owned." Each plaintiff claims to have purchased one of the fraudulently identified vehicles, in reliance on Defendants' alleged misrepresentations, at an increased price based on a false value. After the circuit court granted an extension of time for Defendants' responses, four answers were filed. Ford answered in October 2003. Ray and Katrina Fayne responded jointly in the same month.

---

[1]The three plaintiffs were joined by forty-one others at the initial filing of the suit in the Holmes County Circuit Court. The claims of the thirty-eight who were not residents of Holmes County were later severed and transferred to the proper jurisdictions on October 26, 2004. Six plaintiffs remained, but only the three before this Court signed retail installment contracts, the contract containing the arbitration provision in dispute, with GCFM and, thus, might be subject to arbitration of their claims.

GCFM answered in November 2003, and Keith Clark filed his answer in December 2003. Each party listed the right to arbitrate the dispute as a defense.

¶3.     On February 27, 2004, Ford alone filed a Motion to Compel Arbitration and Stay Litigation in the United States District Court for the Southern District of Mississippi in Jackson, Mississippi.  The district court denied the motion on March 31, 2005, citing Ford's non-signatory status and finding that the claims brought against Ford "seemingly fall outside the arbitration agreement." *Ford Motor Co.  v.  Ables*, No. 3:04-CV-00152 (S.D. Miss. March 31, 2005). Ford appealed, and the United States Court of Appeals for the Fifth Circuit reversed the district court, holding that Ford could compel arbitration as a non-signatory.[2]

¶4.     In June 2004, Plaintiffs filed a Motion for Partial Summary Judgment and Declaratory Judgment requesting the circuit court to decide the arbitrability of their claims.  Plaintiffs contended that the arbitration clauses in the retail installment contracts executed by Plaintiffs did not cover claims asserted by Plaintiffs in their complaint.  GCFM and Ford responded in the same month by filing in circuit court a Joint Motion to Stay Resolution of Plaintiffs' Motion for Partial Summary Judgment.  On October 26, 2004, the circuit court partially granted Defendants' motion, staying resolution until November 26, 2004.

¶5.     On November 29, 2004, still awaiting a decision from the circuit court on Plaintiffs' motion regarding arbitrability of the claims, GCFM and Keith Clark filed a Motion to Stay Litigation and Compel Arbitration in the circuit court, which all of the other Defendants subsequently joined. The circuit court entered an Order on March 10, 2005, staying its ruling

[2]*Ford Motor Co. v. Ables*, No. 05-60391, 2006 U.S. App.  LEXIS 29347  (5th Cir. Nov. 29, 2006).

on Plaintiffs' Motion for Partial Summary Judgment until the federal district court ruled on Ford's Motion to Compel. Following the federal district court's denial of Ford's Motion to Compel on March 31, 2005, the circuit court entered an Order on June 13, 2005, granting Plaintiffs' Motion for Partial Summary Judgment and Declaratory Judgment. Explicitly relying on the federal district court opinion, the circuit court reached the same conclusion and found that Plaintiffs had no duty to submit to arbitration of their claims. The circuit court subsequently, on July 12, 2005, denied Defendants' Motion to Stay Litigation and Compel Arbitration.

¶6. GCFM and Keith Clark appealed jointly on July 5, 2005, with Ford filing its appeal separately on the same day. Ray and Katrina Fayne filed a Notice of Appeal on July 8, 2005. Defendants each claim the decision by the Holmes County Circuit Court was in error regarding arbitrability of Plaintiffs' claims. They raise one issue, whether the trial court properly refused to stay litigation and compel arbitration of those claims presented by Plaintiffs who executed arbitration agreements. Ford claims the court erred in finding it incapable of compelling arbitration as a non-signatory. Ford adopts the arguments presented by the other Defendants and further presents two legal issues, specifically in relation to Ford. Ford raises two issues: (1) whether Ford has a right compel arbitration as a non-signatory to the retail installment contract and (2) whether the circuit court should have granted Defendants' motion to stay litigation as to Ford until resolution of the arbitrability of Plaintiffs' claims.

4

**DISCUSSION**

### I. WHETHER THE TRIAL COURT ERRED IN DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY LITIGATION

¶7. A lower court's grant or denial of a motion to compel arbitration is reviewed de novo. *East Ford, Inc. v. Taylor,* 826 So. 2d 709, 713 (Miss. 2002).

¶8. The fraudulent actions alleged by Plaintiffs resulted in the purchase of vehicles, a transaction involving commerce. Written agreements to arbitrate contained in contracts evidencing a transaction involving commerce are subject to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 et seq., and in determining whether to grant a motion to compel arbitration of a dispute subject to the FAA, there are two prongs of inquiry. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626-28, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985); *East Ford,* 826 So. 2d at 713. The first prong the Court must examine is whether the parties agreed to arbitrate the dispute. *Id.* Second, the Court must determine whether legal constraints external to the parties' agreement bar arbitration of the claims. *Id.*

**Prong 1: Whether the parties agreed to arbitrate the dispute**

¶9. The first prong is two-fold in that the court considers whether there is a valid arbitration agreement and then whether the parties' dispute is within the scope of the arbitration agreement. *East Ford,* 826 So. 2d at 713.

**A. Whether there is a valid arbitration agreement**

¶10.    Plaintiffs do not dispute the validity of the arbitration agreement.  Instead, the parties disagree about the scope of the agreement, specifically, whether the Plaintiffs' claim of fraudulent behavior is encompassed within the arbitration provision.

**B. Whether the parties' dispute is within the scope of the arbitration agreement**

¶11.    This appeal centers around the parties' disagreement as to the interpretation of the agreement.  Defendants dispute who, a court or an arbitrator, should interpret the agreement and determine its scope as well as whether the arbitration agreement in the retail installment contract encompasses Plaintiffs' claims. Consequently, two questions must be answered: (1) whether the proper forum for determining the scope of the arbitration agreement is in court or in arbitration, *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986) (citing *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582-83, 80 S. Ct. 1347 4 L. Ed. 2d 1409 (1960)), and (2) whether the arbitration agreement encompasses the dispute, *Mitsubishi Motors*, 473 U.S. at 626-28. Efficiency dictates that we decide first whether it is proper for the court to interpret the arbitration agreement before attempting to interpret it.

¶12.    First, we must determine the proper interpreter of the arbitration agreement. We have not previously answered this particular inquiry. However, since the FAA governs the enforcement of the disputed agreement, we are bound by the decisions of the United States Supreme Court, which has spoken on the issue. While this Court consistently recognizes the established federal policy favoring arbitration agreements, *Terminix Int'l, Inc., Ltd. P'ship v. Rice*, 904 So. 2d 1051, 1055 (Miss. 2004),  [t]he presumption in favor of arbitration does

6

not apply to the question of who should decide arbitrability, because the purpose of the FAA was to make arbitration agreements as enforceable as other contracts, not more so, ***First Options of Chicago, Inc. v. Kaplan***, 514 U.S. 938, 945, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995). Whether a party is bound by an arbitration agreement is generally considered an issue for the courts, not the arbitrator, "[*u]nless the parties clearly and unmistakably provide otherwise*." ***AT&T Technologies,*** 475 U.S. at 649 (emphasis added). In other words, when the parties have explicitly agreed that the question of arbitrability is to be decided by an arbitrator rather than the court, that agreement must be interpreted by an arbitrator.

¶13. The United States Supreme Court has mandated that general contract principles will apply. Consequently, the general practice of allowing courts to determine the issue of arbitrability is superceded by the contractual terms of an arbitration provision which provide that arbitrability will be decided by an arbitrator. The terms of the arbitration provision must be honored in a dispute over arbitrability. Therefore, arbitration of the issue of arbitrability is the mandatory result if those are the terms to which the parties have validly agreed. That premise is entirely consistent with the view of this Court. It is well established that parties may agree on the scope of arbitration in any way they desire. ***B. C. Rogers Poultry, Inc. v. Wedgeworth***, 911 So. 2d 483, 491 (Miss. 2005). Contracts are solemn obligations, and the court must give them effect as written. ***Id.*** at 487.

¶14. Under the exception in the binding authority, the question becomes whether the agreement clearly and unmistakably states that interpretation of the agreement will be arbitrated. The pertinent part of the arbitration provision reads:

7

Either you or Creditor ("us" or "we") (each, a Party) may choose at any time, including after a lawsuit is filed, to have any Claim related to this contract decided by arbitration. Such claims include, but are not limited to the following: (1) claims in contract, tort, regulatory, or otherwise; (2) *claims regarding the interpretation, scope or validity of this clause or arbitrability of any issue....*

(Emphasis added).

¶15. Defendants assert that the circuit court never should have ruled on the question of whether Plaintiffs agreed to arbitrate their claims when one of the specific examples in the agreement lists disputes as to arbitrability of claims as an example of issues for which the parties agreed to submit to arbitration. Plaintiffs contend that the governing language is the general language "related to [the retail installment] contract" which precedes the specific example Defendants cite. Plaintiffs maintain that the general language does not apply to their claim, which relates to pre-sale fraudulent representations and not to the retail installment contract, a financing agreement between the plaintiffs and GCFM. Thus, Plaintiffs argue that the example of arbitrability does not encompass arbitrability of a claim unrelated to the retail installment contract, such as the claim in this case, and accordingly, that the court, not an arbitrator should interpret the agreement because at a minimum the general and specific language Defendants cite is conflicting as opposed to clear and unmistakable.

¶16. Clearly, the language of the arbitration agreement directs that disputes regarding interpretation of the agreement, including scope and arbitrability of issues, to be decided by an arbitrator. Though Plaintiffs dispute the clarity of the language in the provision, the examples in the arbitration provision explicitly identify disputes as to interpretation, scope, validity, and arbitrability of any issue as those subject to arbitration upon the initiation of

8

either party, including after litigation had begun.[3] Therefore, this clear and unmistakable language requires this Court to find that the appropriate forum for interpretation is arbitration.

¶17. Had we found the court capable of deciding arbitrability, we would proceed to determine whether the arbitration agreement encompasses the dispute. However, we need not proceed to the rules of interpretation for arbitration provisions in order to determine whether the circuit court's interpretation of the provision in dispute was proper since we have found that the court was the improper forum for such a determination, and therefore, the circuit court judgment is ineffective. Having applied the first prong of the two-pronged inquiry, this Court finds that the issue on review – whether the plaintiffs' allegations of fraudulent behavior by the defendants are subject to the arbitration agreement in the retail installment contract – is properly decided by an arbitrator rather than a court.

### Prong 2: Whether Legal Constraints External to the Parties' Agreement Foreclose Arbitration of the Claim

¶18. As for the second prong of the test, the existence of legal constraints external to the parties' agreement, foreclosing arbitration of the claim, even if the claim was found to be within the arbitration provision in question, "[t]he FAA mandates that arbitration agreements shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." ***Rice***, 904 So. 2d at 1055 (internal quotes omitted). In considering this prong, courts should apply ordinary state-law contract principles. ***East***

---

[3]GCFM filed its Motion to Compel and to Stay Litigation fifteen months after the suit was filed and was later joined by the other defendants.

***Ford,*** 826 So. 2d at 713-14. Defenses such as fraud, duress, and unconscionability may be asserted to invalidate the arbitration agreement without offending the FAA. *See **id.*** at 714.

¶19.    Plaintiffs allege that they were fraudulently induced to purchase vehicles. Plaintiffs further claim that they were fraudulently induced to enter into a sales contract, and it is only with regard to such sale contract that they claim fraudulent inducement. Yet, no such contract was presented to this Court in either the record, only mentioned in the briefs. This Court is limited to consideration of the facts in the record, while reliance on facts only disclosed in the briefs is prohibited. ***Atlantic Horse Ins. Co. v. Nero***, 108 Miss. 321, 329, 66 So. 780 (1914). Moreover, per the issues raised by the parties in response to the circuit court's denial of defendants' motion to compel arbitration, the subject matter under consideration on review consists exclusively of the arbitration agreement in the retail installment contract. Plaintiffs argue that the retail installment contract encompassing the arbitration agreement is wholly unrelated to the sale of the vehicles and, thus, their claims of fraud. Therefore, as the second prong of the test requires assertion of a contract defense, clearly, Plaintiffs have neither raised the argument nor presented evidence indicating that they were fraudulently induced to enter into the arbitration agreement. Having found from the plaintiffs no allegation of fraudulent inducement to entering the arbitration agreement and no defense presented before the Court as to why the arbitration provision should be deemed unenforceable, this Court finds no legal constraints external to the parties' agreement that would foreclose arbitration.

¶20.    Mississippi law honors contracts as written, a concept the dissent acknowledges but fails to apply. The dissent wholly misses the dispute between the parties on appeal. On appeal from the circuit court's denial of defendants' motion to compel arbitration, the parties dispute

10

one thing - the interpretation of the arbitration agreement. Plaintiffs agreed that upon the occurrence of such a dispute, the parties would submit to arbitration of that issue, and the United States Supreme Court, which this Court is indeed bound to follow, has mandated that we honor the parties' choice. We would act in derogation of the United States Supreme Court as well as the parties' intent to interpret or allow any court, including this one, to interpret the arbitration agreement when the parties have contracted otherwise. We decide today neither whether Plaintiffs' claims are encompassed by the arbitration agreement nor whether the entire case must be decided by arbitration or by trial. Because we honor the parties' written agreement, the dissent voices a fear which is unfounded. We do not end litigation and send the entire case to be arbitrated. We send the parties, according to their undisputed, explicit wishes, to arbitration solely to determine arbitrability of their claims.

¶21.    Upon completion of the two-pronged inquiry, the decisions of this Court and the United States Supreme Court necessitate that we honor the agreement of the parties as evidenced in their contract and find that the circuit court erred in ruling on the interpretation of the arbitration provision and declaring its scope. The trial court decision is vacated as to its determination of arbitrability of the claims.

## II.    WHETHER THE CIRCUIT COURT ERRED IN DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY LITIGATION AS TO FORD

¶22.    Ford argues separately in its appeal of the circuit court judgment that Plaintiffs had no duty to submit their claims of fraud to arbitration. Ford maintains that, as a defendant, despite its non-signatory status, it can independently compel arbitration. Second, it requests

11

that this Court stay the litigation in the circuit court pending arbitration of the claims against the remaining defendants.

¶23. As for Ford's ability to compel arbitration as a non-signatory to the arbitration provision in dispute, Ford first attempted to gain contract enforcement rights in federal district court. The federal district court ruled that Ford could not compel arbitration.[4]

¶24. While the circuit court did not mention comity specifically, when deciding the same issue the court explicitly recognized the analysis of the federal court and issued the same judgment. Comity is similar to full faith and credit but is not governed by the United States Constitution or federal statutes. *See Laskosky v. Laskosky*, 504 So. 2d 726, 729 (Miss. 1987) (citing *Kountouris v. Varvaris*, 476 So. 2d 599, 607 (Miss. 1985); *Cox v. Cox*, 234 So. 2d 885, 892, 108 So. 2d 422 (1959)). Comity is a principle based on courtesy which recognizes the decision of a court from another jurisdiction. "In general, the principle of "comity" is that courts of one state or jurisdiction will give effect to laws and judicial decisions of another state or jurisdiction, not as a matter of obligation but out of deference and mutual respect." Black's Law Dictionary 183 (abridged 6th ed. 1991).

¶25. The courtesy of comity is applied at the discretion of the trial court. *Jundoosing v. Jundoosing*, 826 So. 2d 85, 90 (Miss. 2002); *Laskosky*, 504 So. 2d at 729. The circuit court stayed the identical action in its court to await the outcome in federal district court. Upon the issuance of the district court decision, the circuit court issued a decision drawing its sole rationale and ultimate ruling from the district court judge, referring to him by name. Clearly,

---

[4]As a matter of venue, Ford chose to have the issue of its ability to compel arbitration decided in federal court, and Ford is bound by that choice. The federal district court judgment was reversed on appeal by the United States Court of Appeals for the Fifth Circuit.

when faced with the identical issue, the trial court in its own words "in agreement with the United States District Court" decided to recognize the federal district court's judgment, and this Court finds no abuse of discretion in that decision. However, now that the Fifth Circuit has reversed the district court, the same principle of comity applies, and this Court defers to that ruling. Thus, mooting Ford's appeal to this Court.

¶26. Based on the above reasons, the circuit court should have excluded Ford from its decision of arbitrability because by Ford's choice of forum it was bound by the outcome in federal court. The circuit court applied an acceptable legal standard when it exercised comity with respect to the outcome in federal court as to Ford.

## CONCLUSION

¶27. In accordance with the law, the plain text of the arbitration provision, and the federal policy favoring arbitration, this Court finds that the arbitration provision requires a stay of litigation while Plaintiffs submit to arbitration for a determination of the arbitrability of their claims of fraudulent misrepresentation against GCFM, Keith Clark, Ray L. Fayne, and Katrina Fayne. Therefore, this Court vacates the circuit court's judgment, as to those defendants, interpreting the arbitration provision.

¶28. Additionally, the circuit court judgment denying Ford's right to compel arbitration is reversed in accordance with the reversal by the Fifth Circuit of the district court decision upon which the circuit court wholly relied. Thus, this case is remanded to the circuit court with directions to stay the entire case pending arbitration.

¶29. **VACATED IN PART AND REVERSED AND REMANDED IN PART.**

13

**WALLER AND COBB, P.JJ., CARLSON AND DICKINSON, JJ., CONCUR. EASLEY, J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY EASLEY, J. GRAVES AND RANDOLPH, JJ., NOT PARTICIPATING.**

**DIAZ, JUSTICE, DISSENTING:**

¶30.    Because a contract that is fraudulently induced is void ab initio, and because federal law should not mandate the result in today's case, I must respectfully dissent.

**I.  Arbitration Does Not Apply in This Case.**

¶31.    The majority struggles mightily to apply arbitration to this case, and in doing so, does damage to both the law and the factual record before us.  The following facts are undisputed. There were two transactions in this case.  First, the plaintiffs made a decision to purchase a vehicle from Greater Canton Ford.  Second, the plaintiffs entered into a separate contract with the dealership to secure credit for the purchase of the cars.  The contract for credit contained the arbitration clause which we examine today.

¶32.    However, the fraud alleged by the plaintiffs goes to the pre-sale representations of the dealership.  The majority crafts a particularly flimsy scarecrow when it states that the "Plaintiffs have neither raised the argument nor presented evidence indicating that they were fraudulently induced to enter into the arbitration agreement."  Since this was not an argument of the plaintiffs, it is of course easy for the majority to dismiss it.

¶33.    The plaintiffs actually argued that the arbitration agreement contained in the credit contract did not extend to or relate out of the separate contract for purchase.  Thus they offered that, since the arbitration clause was in a separate transaction, it did not reach their

14

claims. This argument satisfies both logic and common sense. *See **Greenwood v. Sherfield***, 895 S.W.2d 169, 175 (Mo. Ct. App. 1995) ("where the statements that give rise to a tort claim are independent of the contract terms between the parties and do not require reference to the underlying contracts, arbitration is not compelled").

¶34. Further, any fraud to coerce a party into entering a contract automatically invalidates that the contract—and any clause therein—ab initio. The bedrock rule of contract law is that "[a] written contract is to be upheld unless it is obtained through deceit or misrepresentation." ***Continental Jewelry Co. v. Joseph***, 140 Miss. 582, 585, 105 So. 639, 639 (1925); ***Estate of Baxter v. Shaw Assocs.***, 797 So. 2d 396, 399 (Miss. Ct. App. 2001). Accordingly, the arbitration provision contained in the credit contract is not all-encompassing.

## II. Arbitration Damages the Constitutional Rights of Mississippians.

¶35. I also write to express my continuing concern at our steadfast march towards arbitration. Arbitration as a concept is wholly valid—if parties wish to settle disputes outside of the legal system, they should be able to contract for such a result.

¶36. However, two massive problems have proved to be the norm rather than the exception. First, this Court has continually deferred to the decisions of the federal courts and the FAA, which is a creation of the U.S. Congress. In my view, the states are not bound by these decisions, and the Legislature and courts of Mississippi should ultimately regulate the usage of arbitration within our state. *See generally **Allied-Bruce Terminix Companies, Inc. v. Dobson***, 513 U.S. 265, 285-97, 115 S.Ct. 834, 845-51, 130 L.Ed. 753 (1995) (Thomas, J., dissenting).

15

¶37.   I also repeat the same concerns I have previously voiced concerning the unlimited reach of arbitration:  if we decide today that arbitration covers claims wholly unrelated to the contract from which it is grounded, what is not covered by this arbitration agreement?  For example, if one of the plaintiffs had been murdered while at Greater Canton Ford paying a bill, could the dealership insist that the wrongful death claim be submitted to arbitration?  If an employee of Greater Canton Ford picked one of the plaintiff's pockets when he came in on business related to the purchase of a vehicle, and the plaintiff sued the employee for conversion, would he be forced to arbitrate that claim?  Would it make no difference that the conversion had occurred 20 years after her last transaction with Greater Canton Ford?  These very same hypotheticals were dismissed as absurd by the Seventh Circuit, which limited an arbitration agreement over payday loans in *Smith v. Steinkamp*, 318 F.3d 775, 777 (7th Cir. 2003).  Yet today we chart a different path—one towards unlimited arbitration.

¶38.   Lastly, I write to emphasize my continuing belief that all Mississippians have a fundamental constitutional right to both a jury of their peers and access to the court system.  Because arbitration significantly interferes with these fundamental rights, it should be reviewed accordingly with strict scrutiny.  *See Cleveland v. Mann*, 942 So. 2d 108, 121-22 (Miss. 2006) (Diaz, J., dissenting).  Because today the majority continues down a path which deprives Mississippians of fundamental constitutional rights, I must respectfully dissent.

   **EASLEY, J., JOINS THIS OPINION IN PART.**

16