**Robert J. VIDRINE, Sr.,**
**Plaintiff/Counter–**
**Defendant**

**v.**

**BALBOA INS. CO. and American General Financial Servs., Inc., Defendants/Counter–Plaintiffs.**

**John Does 1–10, Defendants.**

**Cause No. 1:08CV1433 LG–RHW.**

United States District Court,
S.D. Mississippi,
Southern Division.

Feb. 11, 2009.

C. Edward Gibson, IV, Hawkins, Stracener & Gibson, PLLC, Brehm Thomas Bell, Brehm T. Bell, Attorney, Bay St. Louis, MS, for Plaintiff/Counter–Defendant.

Emerson Barney Robinson, III, Butler, Snow, O'Mara, Stevens & Cannada, PLLC, Jackson, MS, for Defendants/Counter–Plaintiffs.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION TO COMPEL ARBITRATION AND IMPOSING STAY

LOUIS GUIROLA, JR., District Judge.

THE MATTER BEFORE THE COURT is the Motion to Compel Arbitration and Stay Case [5] filed by Defendants/Counter–Plaintiffs Balboa Insurance Company and American General Financial Services, Inc. ("AGFS"). The Plaintiff/Counter–Defendant has responded and the Movants have replied. After due consideration of the parties' submissions and the relevant law, it is the Court's opinion that the parties have agreed to arbitrate the issues presented in this dispute. Accordingly, the Motion will be granted.

### FACTS AND PROCEDURAL HISTORY

Plaintiff Vidrine obtained a $41,000 Home Equity Line of Credit ("HELOC") from AGFS in 2004, secured by property in Hancock County. Ct. R. 15–2. He subsequently breached his contractual obligation under the deed of trust by failing to keep secure home owners insurance. AGFS to force-placed insurance that it purchased from Balboa under a preexisting master policy. Ct. R. 1–2 p. 38. The policy period was from May 29, 2005 to May 29, 2006, and it provided $40,398 in coverage to AGFS. *Id.* When Hurricane Katrina struck on August 29, 2005, it destroyed Vidrine's home. Balboa processed the resulting insurance claim and paid $12,957.02 to AGFS for the loss. Ct. R. 1–2 p. 39. Vidrine has sued both AGFS and Balboa, contending that AGFS should have purchased more and better insurance to protect his interests, and that Balboa improperly adjusted his claim by attributing too much of the damage to water rather than wind.

AGFS and Balboa contend that Vidrine should be compelled to arbitrate his claims against them, because AGFS has elected arbitration as allowed by the HELOC agreement, and arbitration provisions contained in the agreement encompass all of his claims. Further, AGFS and Balboa seek an order staying this case and enjoining Vidrine from proceeding against any person or entity covered by the arbitration provisions.

Vidrine argues that there is no agreement for arbitration between himself and Balboa for want of consideration, and because Balboa is a non-signatory to the HELOC agreement. Further, he contends that the arbitration clauses are substantively unconscionable, because AGFS retained for itself certain judicial remedies while denying the same to Vidrine.

### DISCUSSION

The HELOC agreement contains a lengthy and comprehensive section on arbitration. It reads as follows:

#### AMERICAN GENERAL HOME EQUITY LINE OF CREDIT AGREEMENT ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL

*DESCRIPTION OF ARBITRATION.* Arbitration is a method of resolving claims and disputes between parties without having to file a lawsuit in court. It is a process in which both sides pres-

ent their case to a neutral third person—the arbitrator—instead of a judge or jury to resolve the dispute. **TO THE FULLEST EXTENT PERMITTED BY LAW, BY SIGNING THIS AGREEMENT, BOTH LENDER AND I ARE VOLUNTARILY WAIVING ANY RIGHT TO A JURY TRIAL OR JUDGE TRIAL OF ALL CLAIMS AND DISPUTES COVERED BY THIS ARBITRATION AGREEMENT** ("this Arbitration Agreement").

*CLAIMS AND DISPUTES COVERED.* Except for those claims mentioned below under the heading "MATTERS NOT COVERED BY ARBITRATION," Lender and I agree that either party may elect to resolve by BINDING ARBITRATION **all claims and disputes between us** ("Covered Claims"). This includes, but is not limited to, all claims and disputes arising out of, in connection with, or relating to:

> My loan from Lender today, any previous loan from Lender and any previous retail credit agreement ("Retail Contract") whether open or closed-end, assigned to Lender; all documents, promotions, advertising, actions, or omissions relating to this or any previous loan or Retail Contract made by or assigned to Lender; **any insurance product,** service, contract, or warranty purchased **in connection with this or any previous loan** or Retail Contract made by or assigned to Lender; any product or service offered to Lender's customers with any assistance or involvement by Lender; **whether the claim or dispute must be arbitrated; the validity and enforceability of this Arbitration Agreement and the Agreement,** my understanding of them, or any defenses as to the validity and enforceability of the Agreement and this Arbitration Agreement; any ne-

gotiations between Lender and me; the closing, servicing, collecting, or enforcement of any transaction covered by this Agreement; any allegation of fraud or misrepresentation; any claim based on or arising under any federal, state, or local law, statute, regulation, ordinance, or rule; any claim based on state or federal property laws; any claim based on the improper disclosure of any information protected under state or federal consumer privacy laws; any claim or dispute based on any alleged tort (wrong), including intentional torts; and any claim for injunctive, declaratory, or equitable relief.

Ct. R. 5–2 p. 13 (emphasis added).

Further, the HELOC agreement provides that "Covered Claims" also include certain claims against third parties such as Balboa, as follows:

> **COVERED CLAIMS AGAINST THIRD PARTIES.** This Arbitration Agreement also covers any claim or dispute between me and any of Lender's employees, officers, agents, or directors; any of its affiliate corporations; **any entities which provided insurance in connection with this or any previous transactions between me and Lender,** any third parties that assigned Retail Contracts or other agreements to Lender; and any of the employees, officers, agents, or directors of such affiliates or third parties.

*Id.* (emphasis added).

Additionally, the HELOC agreement contains the following notice on its last page, above the signature block for the borrower:

---

**BY SIGNING BELOW, I SIGNIFY THAT I HAVE READ, UNDERSTOOD, AND AGREED TO THE**

TERMS AND CONDITIONS OF THIS AGREEMENT, INCLUDING THE ARBITRATION AGREEMENT THAT PROVIDES, AMONG OTHER THINGS, THAT EITHER LENDER OR I MAY REQUIRE THAT CERTAIN DISPUTES BETWEEN U.S. BE SUBMITTED TO BINDING ARBITRATION. IF LENDER OR I ELECT TO USE ARBITRATION, WE AGREE THAT WE WILL HAVE THEREBY WAIVED OUR RIGHTS TO TRIAL BY JURY OR JUDGE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THAT THE DISPUTE WILL BE DECIDED BY AN ARBITRATOR, AND THAT THE DECISION OF THE ARBITRATOR WILL BE FINAL. ARBITRATION WILL BE CONDUCTED PURSUANT TO THE RULES OF THE NATIONAL ARBITRATION FORUM, EXCEPT AS OTHERWISE PROVIDED IN THE ARBITRATION AGREEMENT.

---

I agree that, as of the date first written above ("the Date of Agreement"), I have received and read a fully completed, legible copy of this Agreement, the Truth in Lending Insurance Disclosures, a copy of the Security Instrument, the Privacy Notice, and two copies of a Notice of Right to Cancel (if applicable), and agree to be bound thereby.

CAUTION: IT IS IMPORTANT THAT I THOROUGHLY READ THE CONTRACT BEFORE I SIGN IT.

*Id.* at 16. Vidrine's witnessed signature appears directly below this notice.

■ Section 4 of the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, provides for entry of an order compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement. To decide whether parties must submit to arbitration, a court's first task is to determine whether the parties agreed to arbitrate the dispute at issue. *OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445 (5th Cir.2001); *Harvey v. Joyce*, 199 F.3d 790 (5th Cir. 2000). This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. *OPE Int'l LP*, 258 F.3d at 445.

■ A party cannot be required to submit to arbitration unless he has "agreed so to submit." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). This preliminary question of substantive arbitrability is squarely a matter for judicial determination, unless the parties have agreed to arbitrate the very issue of arbitrability:

> Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question "who has the primary power to decide arbitrability" turns upon what the parties agreed about *that* matter. Did the parties agree to submit the arbitrability question itself to arbitration? If so, then the court's standard for reviewing the arbitrator's decision about *that* matter should not differ from the standard courts apply when they review any other matter that parties have agreed to arbitrate ... a court must defer to an arbitrator's arbitrability decision when the parties submitted that matter to arbitration.

*First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (citations omitted) (emphasis in original).

The Mississippi Supreme Court has held that when parties have agreed to submit the arbitrability question itself to arbitration:

> the general practice of allowing courts to determine the issue of arbitrability is superceded by the contractual terms of an arbitration provision which provide that arbitrability will be decided by an arbitrator. The terms of the arbitration provision must be honored in a dispute over arbitrability. Therefore, arbitration of the issue of arbitrability is the mandatory result if those are the terms to which the parties have validly agreed.... [T]he question becomes whether the agreement clearly and unmistakably states that interpretation of the agreement will be arbitrated.

*Greater Canton Ford Mercury, Inc. v. Ables,* 948 So.2d 417, 422 (Miss.2007).

 In this case, the "Claims and Disputes Covered" provision of the HELOC agreement quoted above clearly and unmistakably states that the parties must submit the arbitrability question itself to arbitration because it is "related to ... whether the claim or dispute must be arbitrated; the validity and enforceability of this Arbitration Agreement and the [HELOC] Agreement; ... or any defenses as to the validity and enforceability of the [HELOC] Agreement and this Arbitration Agreement." Ct. R. 5–2 p. 13. Thus, the Court finds that Vidrine agreed to arbitrate the issues he has raised in opposition to the Motion to Compel Arbitration. The Motion should be granted so that the issue of arbitrability, and the underlying claims, if appropriate, may be decided by the arbitrator.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion to Compel Arbitration and Stay Case [5] filed by Defendants/Counter–Plaintiffs Balboa Insurance Company and American General Financial Services, Inc. is **GRANTED.** The Plaintiff is hereby ordered to submit his claims against the Defendants to arbitration.

**IT IS FURTHER ORDERED AND ADJUDGED** that this case is stayed until Plaintiff notifies the Court in writing that arbitration has been concluded.