# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00156-COA

**THE ESTATE OF ALTON BOLEWARE, A. REGNAL BLACKLEDGE, ADMINISTRATOR**　　　　　　　　　　　**APPELLANT**

**v.**

**BRENDA McPHAIL AND PRIORITYONE BANK**　　　　　　　**APPELLEES**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/14/2023 |
| TRIAL JUDGE: | HON. MATTHEW GORDON SULLIVAN |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ORVIS A. SHIYOU JR. |
| | COREY DANIEL GIBSON |
| | TISDALE CHRISTIAN SHIYOU |
| ATTORNEYS FOR APPELLEES: | NOAH LEE SANFORD |
| | C. PHILLIP BUFFINGTON |
| | CLAIRE DULANEY WILLIAMS |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED AS MODIFIED - 04/08/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., WESTBROOKS AND EMFINGER, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.　The Estate of Alton Boleware (the Estate) filed a complaint against PriorityOne Bank and Brenda McPhail (collectively, Appellees) claiming that McPhail misappropriated funds that belonged to Alton Boleware, the deceased. PriorityOne Bank filed a motion to stay litigation and compel arbitration, arguing that Boleware entered into a Deposit Account Agreement with the bank that contained a provision requiring mediation and arbitration of certain disputes (Arbitration Addendum).

¶2.　After a hearing on the matter, the Covington County Circuit Court found that the

Arbitration Addendum was valid and that the Estate's claims against the Appellees were within the scope of the arbitration agreement. The circuit court also determined that the Estate failed to meet its burden of proving the existence of any contract defenses that would invalidate the Arbitration Addendum. The circuit court accordingly granted the motion to stay litigation and compel arbitration.

¶3. The Estate now appeals, arguing that the circuit court erred in submitting the matter to arbitration because Boleware lacked the mental capacity to enter into the Deposit Account Agreement and because McPhail and an employee of PriorityOne Bank had unduly influenced Boleware into creating a joint account with McPhail. The Estate further asserts that because McPhail is a third party to the Deposit Account Agreement, the circuit court erred in compelling arbitration as to the Estate's claims against McPhail.

¶4. After our review, we find that the circuit court did not err in staying litigation and compelling arbitration. However, we clarify that pursuant to the arbitration agreement in this case, an arbitrator, not a court, must decide the threshold question of whether the Estate's claims against the Appellees are within the scope of the arbitration agreement. We therefore affirm the circuit court's judgment as modified.

**FACTS**

¶5. In July 2022, the Estate filed a complaint against the Appellees alleging conversion, embezzlement, detrimental reliance, unjust enrichment, breach of fiduciary duty, and fraud stemming from McPhail's allegedly improper disbursement of funds from Boleware's bank account at PriorityOne Bank.

2

¶6. In the complaint, the Estate alleged that Boleware's sister, Linda, had deposited approximately $350,000 into an account with PriorityOne Bank. The account was listed in Linda's name and payable on death to Boleware. On December 30, 2019, Linda died. According to the complaint, the next day, McPhail, who was Linda's close friend, called Boleware and informed him that someone from PriorityOne Bank had contacted her and asked her to bring him to the bank to sign some documents. McPhail picked up Boleware from his home and drove him to PriorityOne Bank. Boleware stayed inside McPhail's vehicle, and a bank employee brought a Deposit Account Agreement to McPhail's vehicle for Boleware to sign. The Deposit Account Agreement contained an arbitration-mediation provision. Boleware signed the documents, which authorized PriorityOne Bank to place the $350,000 from Linda's account into a joint account for McPhail and Boleware. McPhail then changed the address listed on the account from Boleware's address to her address.

¶7. The Estate claimed that Boleware was unaware of the balance of the account and repeatedly asked McPhail about it. McPhail told Boleware that Linda left him $10,000 and that she left the remaining amount to charity upon her death. The Estate alleged, however, that McPhail actually withdrew the remaining funds from the account and used them for her own benefit and the benefit of others, to the exclusion of Boleware. After Boleware died in 2020, the Estate discovered that the funds were missing. The Estate claimed that Boleware was vulnerable and lacking full mental capacity and that he detrimentally relied upon the misrepresentations by McPhail and an employee at PriorityOne Bank.

¶8. On October 3, 2022, PriorityOne Bank filed a motion to compel mediation or

3

arbitration and stay the proceedings, arguing that the Estate's claims were subject to mediation or arbitration because Boleware executed a valid, binding Deposit Account Agreement that contained an arbitration provision. PriorityOne attached the Deposit Account Agreement and Arbitration Addendum to its motion. The Arbitration Addendum provides, in pertinent part, as follows:

> The parties hereto agree that any and all disputes, claims and controversies between them, whether individual, joint, or class in nature arising out of or in any way related to this agreement, services, transactions or otherwise, including with limitation contract and tort disputes . . . shall be resolved by mediation or binding arbitration in the State of Mississippi.

The Arbitration Addendum also reflects that the parties "agree first to try in good faith to settle the dispute by mediation . . . ." However, "[i]f mediation does not result in settlement within thirty (30) days, either party may provide written notice to the other of the parties' intention to arbitrate the dispute and upon written demand for arbitration, the dispute shall be submitted to arbitration . . . ." The Arbitration Addendum further provides that

> [t]his arbitration provision is made pursuant to a transaction involving interstate commerce and the Federal Arbitration Act (FAA) shall apply to the construction, interpretation and enforceability of this arbitration provision . . . . Any dispute as to whether a particular claim or dispute is subject to arbitration under this section shall be decided by the arbitrator.

¶9. The Estate filed an opposing motion arguing that the Deposit Account Agreement and its arbitration provision was invalid because Boleware entered into the agreement as a result of fraud and undue influence. The Estate claimed that Boleware "lacked the capacity to understand and agree to the [Deposit Account Agreement and its Arbitration Addendum]" because Boleware had a "known general weakness of intellect" and was "undergoing cancer

4

treatments[.]" The Estate also argued that its claims for relief fell outside of the scope of the Arbitration Addendum.

¶10.    PriorityOne Bank filed a response and asserted that the Estate failed to provide any evidence in support of its claim that Boleware lacked mental capacity to enter into the Deposit Account Agreement.  PriorityOne Bank argued that "an abundance of evidence" shows that Boleware possessed the requisite legal capacity to enter into the Deposit Account Agreement.  In support of its argument, PriorityOne Bank attached the following exhibits to its motion: (1) a decree from the chancery court adjudicating Boleware to be "of sound and [disposing] mind, memory[,] and understanding and vested with the legal right to execute" his Last Will and Testament on October 13, 2020; (2) the affidavits of the two subscribing witnesses who witnessed Boleware execute his Last Will and Testament and testified under oath that Boleware was "of sound and disposing mind and memory"; (3) Boleware's General Power of Attorney and Durable Power of Attorney for Health Care executed on January 23, 2020; (4) a warranty deed conveying real property executed by Boleware on March 20, 2020; (5) the affidavit of Tommy Rogers, the attorney who prepared Boleware's Last Will and Testament, powers of attorney, and the warranty deed, stating that based upon his interactions with Boleware, he found Boleware "to be fully competent, of sound and disposing mind and memory, fully appreciative and understanding of the terms of the aforesaid instruments, and under no duress or threat"; and (6) the affidavit of Kimberly Chain, the PriorityOne Bank employee who spoke with Boleware and witnessed his execution of the Deposit Account Agreement, which contained the Arbitration Addendum, stating that Boleware appeared to

5

be "physically alert and attentive" during the conversation about the account and "appeared to be of sound mind and capable of making the decision to sign the [Deposit] Account Agreement." Chain also stated that she did not observe "any signs, symptoms or indications that made [her] believe [Boleware] was mentally incapable of making decisions about his finances or the account," nor did she observe "any threats, coercion, or pressure on [Boleware] to sign the [Deposit] Account Agreement."

¶11. After a hearing on the matter, the circuit court entered its judgment granting the Appellees' motion to compel arbitration and stay the proceedings pending a resolution of arbitration. The circuit court explained that the Arbitration Addendum required "all disputes, claims, and controversies between [the Parties] . . . arising out of or in any way related to this [Deposit Account] Agreement, services, transactions or otherwise, including without limitation contract and tort disputes . . . shall be resolved by mediation or binding arbitration in the State of Mississippi." The Arbitration Addendum also provided that any dispute as to whether a particular claim is subject to arbitration "shall be decided by the arbitrator." The circuit court found that based on the evidence presented, Boleware possessed the legal capacity to enter into the Deposit Account Agreement on December 31, 2019, and therefore the Deposit Account Agreement is valid. The circuit court also found the Estate's claims against PriorityOne Bank and McPhail fell within the scope of the Deposit Account Agreement's Arbitration Addendum. Finally, the circuit court determined that the Estate failed to set forth sufficient facts or a legal basis to support a finding that contract defenses such as fraud, duress, or unconscionability would preclude the enforcement of the Arbitration

6

Addendum.

¶12.    The Estate now appeals.

## STANDARD OF REVIEW

¶13.    We review de novo the grant of a motion to compel arbitration. *Bank of Holly Springs v. Puryear ex rel. Est. of Brown*, 309 So. 3d 598, 602 (¶12) (Miss. Ct. App. 2020). "We follow the federal policy favoring arbitration. Therefore, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id*. (citation and internal quotation marks omitted).

## DISCUSSION

### I.    Whether the circuit court erred in granting the Appellees' motion to compel arbitration.

¶14.    On appeal, the Estate argues that the circuit court erred in granting PriorityOne Bank's motion to stay the proceedings and compel arbitration. The Estate maintains that the arbitration provision of the Deposit Account Agreement is invalid because Boleware lacked the mental capacity to enter into the agreement and that Boleware entered into the Deposit Account Agreement as a result of undue influence and fraud by McPhail and an employee of PriorityOne Bank.

¶15.    When determining whether a party is bound to arbitration, we apply a two-prong inquiry. *Belhaven Senior Care LLC v. Smith*, 359 So. 3d 612, 616 (¶10) (Miss. 2023). First, we determine if a valid arbitration agreement exists; if so, we then consider whether "the parties' dispute is within the scope of the arbitration agreement." *Id*. If both questions in the first prong are answered in the affirmative, we move to the second prong and ask "whether

7

legal constraints external to the parties' agreement foreclosed arbitration of those claims." *Gregory Meridian Acquisition LLC v. McFarland*, 386 So. 3d 381, 386 (¶9) (Miss. Ct. App. 2023).

### A. Whether the parties agreed to arbitrate the dispute.

¶16.     In determining whether the parties are bound to arbitration, we must first determine if a valid arbitration agreement exists. *Belhaven Senior Care*, 359 So. 3d at 616 (¶10). If we find that a valid agreement exists, we then determine whether the parties' dispute is within the scope of the arbitration agreement. *Id*.

¶17.     "To determine if the arbitration agreement is valid, we apply contract law to analyze whether a valid contract exists between the parties." *Caplin Enters. Inc. v. Arrington*, 145 So. 3d 608, 613 (¶9) (Miss. 2014). "The elements of a contract are (1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *Id*. (internal quotation marks omitted). At issue before us is whether Boleware possessed the legal capacity to make a contract.

¶18.     The Estate argues that Boleware lacked the mental capacity to enter into the Deposit Account Agreement, and therefore the agreement, including the Arbitration Addendum, is invalid. This Court has explained that "[t]he law presumes a person sane and mentally capable to enter into a contract. The burden is upon the party seeking to avoid an instrument on the ground of insanity or mental incapacity to establish it by a preponderance of proof." *Magee Cmty. Care Ctr. LLC v. Perkins*, 333 So. 3d 34, 41 (¶20) (Miss. Ct. App. 2021).

8

"Thus, [the Estate] was required to rebut the presumption of requisite mental capacity and show by a preponderance of the evidence that [Boleware] was mentally incapable of entering into [the Deposit Account Agreement]." *Id.*

¶19.   In support of its argument that Boleware lacked the mental capacity to enter into the Deposit Account Agreement, the Estate claims that Boleware had a "known general weakness of intellect" and that he was "undergoing cancer treatments." Our review of the record reflects that the Estate failed to provide any evidence in support of its claims.

¶20.   To the contrary, PriorityOne Bank provided numerous exhibits in the circuit court proceedings that showed Boleware possessed the legal mental capacity to enter into the Deposit Account Agreement. The exhibits reflect that Boleware executed the General Power of Attorney and the Durable Power of Attorney for Health Care in January 2020, just one month after he entered into the Deposit Account Agreement. Boleware also executed a warranty deed in March 2020. The attorney who drafted these instruments signed an affidavit confirming that based on his interactions with Boleware, he found Boleware to be fully competent and understanding of the terms of the instruments and under no duress or threat at the time of execution. In October 2020, shortly before his death and less than a year after entering into the Deposit Account Agreement, Boleware executed his Last Will and Testament. The chancellor's decree admitting Boleware's Last Will and Testament for probate found that Boleware "was of sound and [disposing] mind, memory[,] and understanding" at the time he executed the will. The subscribing witnesses to Boleware's will signed affidavits confirming that at the time he executed his will, Boleware was of sound

9

and disposing mind. After reviewing these exhibits, as well as Chain's affidavit describing Boleware's demeanor and mental capacity at the time he entered into the Deposit Account Agreement, the circuit court held that "the evidence supports that [Boleware] had the legal capacity to enter into the [Deposit Account Agreement,] . . . and therefore, the Agreement is valid."

¶21. After reviewing the record, we find that the Estate failed to meet its burden of "rebut[ting] the presumption of requisite mental capacity and show[ing] by a preponderance of the evidence that [Boleware] was mentally incapable of entering into [the Deposit Account Agreement]." *Id*. We therefore find that a valid arbitration agreement exists.

¶22. Because we find that a valid arbitration agreement exists, our next consideration is whether the Estate's claims are within the scope of the arbitration agreement. *Belhaven Senior Care*, 359 So. 3d at 616 (¶10). The Estate and the Appellees disagree over whether the Estate's claims fall within the scope of the Arbitration Addendum. However, "before we determine whether [the Estate's] claims are within the scope of the arbitration agreement, we must first determine who—a court or an arbitrator—should decide that issue." *Bank of Holly Springs*, 309 So. 3d at 603 (¶14) (citing *Greater Canton Ford Mercury Inc. v. Ables*, 948 So. 2d 417, 421 (¶11) (Miss. 2007)). The Arbitration Addendum in the case before us is governed by the FAA; therefore, "we are bound by the decisions of the United States Supreme Court" on this issue. *Id*. This Court has recognized that "[t]he question whether a particular dispute is subject to arbitration is generally considered an issue for the courts, not the arbitrator, unless the parties clearly and unmistakably provide otherwise." *Id*. (internal

10

quotation marks omitted). "In other words, when the parties have explicitly agreed that the question of arbitrability is to be decided by an arbitrator rather than the court, that agreement must be interpreted by an arbitrator." *Id.*

¶23. In granting the Appellees' motion to compel arbitration, the circuit court found that the Estate's claims, including its tort claims, fall within the scope of the Arbitration Addendum. The circuit court explained that the Arbitration Addendum states that its provisions "apply to all disputes arising from the [Deposit Account] Agreement, services, transactions, or otherwise, including tort disputes."

¶24. However, the Arbitration Addendum clearly provides that "[a]ny dispute as to whether a particular dispute or claim is subject to arbitration under this section shall be decided by the arbitrator." We therefore find that "the parties clearly and unmistakably agreed that an arbitrator, not a court, would decide any dispute concerning the scope of the arbitration agreement and the arbitrability of any claim." *Id.* at 604 (¶18); *see also Ables*, 948 So. 2d at 422-23 (¶¶14-16); *Swindle v. Harvey*, 23 So. 3d 562, 570-71 (¶¶22-24) (Miss. Ct. App. 2009). Although the circuit court correctly granted the Appellees' motion to stay litigation and compel arbitration, an arbitrator must determine whether the Estate's claims against the Appellees are within the scope of the Arbitration Addendum.

> B. *Whether any external legal constraints bar enforcement of the arbitration agreement.*

¶25. The second prong in determining whether parties are bound to arbitration requires us to ask "whether legal constraints external to the parties' agreement foreclosed arbitration of those claims." *Gregory Meridian Acquisition*, 386 So. 3d at 386 (¶9). "Under the second

11

prong, applicable contract defenses available under state contract law such as fraud, duress, and unconscionability may be asserted to invalidate the arbitration agreement without offending the [FAA]." *E. Ford Inc. v. Taylor*, 826 So. 2d 709, 713 (¶10) (Miss. 2002). As the party resisting arbitration, the Estate "carries the burden of proving that a contract defense is applicable." *St. Dominic Ambulatory Surgery Ctr. LLC v. Shaffer*, 329 So. 3d 509, 514 (¶13) (Miss. Ct. App. 2021).

¶26. The Estate argues that McPhail and an employee of PriorityOne Bank engaged in fraudulent acts and unduly influenced Boleware to execute the agreement and create a joint account with McPhail. The Estate submits that enforcing the Arbitration Addendum is unconscionable because Boleware lacked the mental capacity to enter into the Deposit Account Agreement.

¶27. The Mississippi Supreme Court has held that "[t]he doctrine of unconscionability applies only to the most egregious of contractual situations." *LAGB LLC v. Total Merch. Servs. Inc*., 284 So. 3d 720, 727 (¶17) (Miss. 2019). "An unconscionable contract is one such as no man in his senses and not under a delusion would make on the one hand, and as no honest and fair man would accept on the other." *Id*. (internal quotation marks omitted). "Procedural unconscionability is established by showing a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms." *Id*. (internal quotation marks omitted).

¶28. On appeal, the Estate does not argue that the terms of the Arbitration Addendum or

Deposit Account Agreement are unconscionable; rather, the Estate argues that it would be unconscionable for this Court to compel arbitration because Boleware was fraudulently and unduly influenced into entering the Deposit Account Agreement. The Estate bases its argument on its claim that Boleware lacked the mental capacity to enter into the Deposit Account Agreement. As discussed above, the Estate failed to provide any evidence in support of its claim that Boleware lacked the mental capacity to enter into the Deposit Account Agreement. Moreover, the evidence in the record supports the circuit court's finding that Boleware possessed the requisite mental capacity to enter into the Agreement.

¶29. Additionally, the supreme court has held:

> A claim that a party was fraudulently induced to enter into a contract is not a sufficient basis for a trial judge to usurp the authority of the arbitrator to decide the issue, because federal law has clearly established that allegations of fraud in the inducement of a contract as a whole must be submitted to arbitration.

*Va. Coll. LLC v. Blackmon*, 109 So. 3d 1050, 1054 (¶13) (Miss. 2013). Therefore, "[w]e will not invalidate an arbitration provision on the basis of fraudulent inducement, unless the complaint specifically and clearly alleges the party was fraudulently induced to enter into the agreement to arbitrate[.]" *Id*. This claim "must be independent of any fraud inducing the contract as a whole—and the claim must be pleaded with particularity." *Id*.

¶30. Here, the Estate claims the Deposit Account Agreement as a whole—and not just the Arbitration Addendum—was the result of fraud. Therefore, based on the particular facts of this case, we decline to invalidate the Arbitration Addendum on the basis of the Estate's unsupported claim that McPhail and an employee of PriorityOne Bank fraudulently induced Boleware to enter into the Deposit Account Agreement.

¶31. After our review, we find that the Estate failed to meet its burden of proving the existence of any contract defenses that would invalidate the Arbitration Addendum. We therefore find no legal constraints external to the Deposit Account Agreement and its Arbitration Addendum that would preclude arbitration.

**II. Whether the circuit court erred in ordering the Estate's claims against McPhail to be arbitrated.**

¶32. Finally, the Estate argues that the circuit court erred in ordering the Estate's claims against McPhail to be arbitrated. The Estate maintains that McPhail is a third-party beneficiary to the Deposit Account Agreement, and therefore she lacked standing to compel arbitration of the Estate's claims against her.

¶33. However, the Deposit Account Agreement reflects that Boleware and McPhail created a joint account with the right of survivorship at PriorityOne Bank. Both Boleware and McPhail signed the Deposit Account Agreement as account owners. Therefore, McPhail is not a third-party beneficiary but, rather, a signatory and a party to the Deposit Account Agreement.

¶34. As stated, the Arbitration Addendum reflects that "the parties" to the Deposit Account Agreement—here, Boleware, McPhail, and PriorityOne Bank—"agree that any and all disputes, claims and controversies between them, whether individual, joint, or class in nature, arising out of or in any way related to this agreement, services, transactions or otherwise, including without limitation contract and tort disputes[,] . . . shall be resolved by mediation or binding arbitration . . . ." Because McPhail is a party to the Deposit Account Agreement, we find that the circuit court did not err in ordering the Estate's claims against McPhail into

14

arbitration.

## CONCLUSION

¶35.    After our review, we find that the circuit court did not err in granting the Appellees' motion to stay and compel arbitration.  However, we clarify that the judgment is modified to reflect that an arbitrator must decide the threshold question of whether the Estate's claims against the Appellees are within the scope of the arbitration agreement.  We therefore affirm the circuit court's judgment as modified.

¶36.    **AFFIRMED AS MODIFIED.**

**BARNES, C.J., WILSON, P.J., WESTBROOKS, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND ST. PÉ, JJ., CONCUR.  McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**